**Alyssa POZNANSKI, a Minor, by her Parent and Next Friend, Heather POZNANSKI and Heather Poznanski, individually, Appellants (Plaintiffs),**

v.

**George HORVATH, Appellee (Defendant).**

No. 71S03–0111–CV–592.

Supreme Court of Indiana.

May 30, 2003.

Daniel H. Pfeifer, Jon A. Criss, Sweeney, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorneys for Appellants.

Lynn M. Butcher, Don G. Blackmond, South Bend, IN, Attorneys for Appellee.

**CIVIL TRANSFER**

RUCKER, Justice.

The question we address in this opinion is whether the very act of an unprovoked biting by a dog that in the past displayed no vicious tendencies is sufficient by itself for a jury to infer that the animal's owner knew, or should have known, of the dog's vicious tendencies. We grant transfer to hold that it is not.

### Facts and Procedural History

In this summary judgment action the following facts are not in dispute. George Horvath lives in South Bend and owned a mixed-breed sheepdog named Hey. The dog had never bitten anyone and was well behaved. No one had ever complained about Hey, and he did not usually wander out of Horvath's yard. On July 23, 1997, Horvath allowed Hey to remain outside unattended. The dog was neither on a leash nor confined by a fence. When Alyssa Poznanski and her mother walked by Horvath's home, Hey bit Alyssa without provocation. As a result Alyssa suffered a cut to her face requiring stitches. Among other things, a South Bend city ordinance provides in pertinent part "[e]very owner and/or his agent of an animal within the City shall see that his or her animal . . . is properly restrained and not at large." Appellant's App. at 91. The ordinance defines "at large" as "any animal that is not under restraint." *Id.* at 92.

In her individual capacity and on behalf of Alyssa as next friend, Alyssa's mother (hereafter "the Poznanskis") sued Horvath for personal injuries and medical expenses. In response, Horvath filed a motion for summary judgment. Finding there was no genuine issue of material fact as to whether Horvath knew or should have known of any vicious tendencies of the dog, the trial court granted the motion. The Poznanskis appealed. On review, the Court of Appeals reversed and remanded, finding genuine issues of material fact remained regarding whether Horvath: (1) knew or should have known of the dog's vicious propensities; (2) used reasonable care in keeping the dog restrained; and (3) could be held liable under the local ordinance requiring proper restraint of animals.

Horvath sought transfer, which this Court previously granted. *Poznanski v. Horvath*, 761 N.E.2d 423 (Ind.2001).

### Standard of Review

 Our standard of review is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind. 2001). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the facts are capable of supporting conflicting inferences. *Woodward Ins., Inc. v. White*, 437 N.E.2d 59, 62 (Ind.1982). Any doubt as to a fact or an inference to be drawn is resolved in favor of the non-moving party. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Tom–Wat*, 741 N.E.2d at 346.

### Discussion

Relying on *Layman v. Atwood*, 175 Ind. App. 176, 370 N.E.2d 933 (1977), the Court of Appeals in this case concluded that Horvath could not be absolved of liability simply because his dog had never before bitten anyone. According to the court, "the very fact that Hey bit Alyssa without provocation is evidence from which a reasonable inference can be made that Hey had vicious tendencies. Further, it may be inferred that if the dog had vicious tendencies based on this one incident, then similar to *Layman*, a question of fact exists as to whether Horvath knew or, at the least, should have known of these tendencies." *Poznanski v. Horvath*, 749 N.E.2d 1283, 1286 (Ind.Ct.App.2001).

In *Layman*, a father acting in his individual capacity and as next friend, sued Larry and Sherrod Atwood when their Saint Bernard bit the father's eight-year-old daughter. The Atwoods moved for summary judgment that was supported by affidavit. Among other things, the affidavit provided that the dog had always been an affectionate companion to the Atwood children and that prior to this incident had never bitten or harmed anyone in any way. *Layman*, 370 N.E.2d at 934. The trial court granted the motion. On review the Court of Appeals reversed. Noting that the dog-biting incident was unprovoked, the court held:

> A jury could reasonably infer that the very act of unprovoked biting by the Atwoods' dog was evidence of that animal's vicious tendencies. If an animal does, indeed, have vicious tendencies a jury could reasonably infer that the animal's owner knew or, at least, should have known of those vicious tendencies.

*Id.* at 935.

 We first observe that the "very act of unprovoked biting" by a dog does not necessarily mean the dog is dangerous or vicious. Under our common law, all dogs, regardless of breed or size, are presumed to be harmless domestic animals. *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind. 1993). This presumption is overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. *Id.* A dangerous propensity is a tendency of the animal to do any act that might endanger the safety of persons or property in a given situation. *Id.* Thus, depending on the facts of a particular case, a dog's unprovoked biting may or may not be evidence of the dog's vicious tendencies. For example, although technically a "biting," a playful nibble on the hand is one thing, while a "teeth-baring" clamp on the arm is quite another. In any event, in this

case the record shows that Hey either "bit" or "nipped" Alyssa in the face. Appellant's App. at 59. Regardless of the characterization, the incident resulted in Alyssa receiving hospital and medical attention including several stitches to her face. Under these circumstances a jury could reasonably conclude that Hey at least exhibited dangerous, if not vicious, tendencies.

■ The question remains whether in light of a dog exhibiting dangerous or vicious tendencies for the first time, may a jury reasonably infer that the dog's owner knew, or at least should have known of those tendencies. If so, then this inference alone is enough to create a genuine issue of material fact to defeat a dog owner's claim that he or she was unaware of such tendencies. We conclude however that a jury may not make such an inference.

■ When wild animals are kept as pets, an owner is liable for injuries caused by the animal. *Irvine v. Rare Feline Breeding Ctr., Inc.*, 685 N.E.2d 120, 125 (Ind.Ct.App.1997), *trans. denied.* This is so even if the owner had no prior knowledge of the animal's propensity to cause harm, and even if the owner has exercised the utmost care in preventing harm. In essence, strict liability is imposed on owners of wild animals. *Id.* Owners of domestic animals may also be held liable for harm caused by their pet but only if the owner knows or has reason to know that the animal has dangerous propensities. *Klenberg v. Russell*, 125 Ind. 531, 25 N.E. 596, 597 (1890) ("[T]he owners of creatures which, as a species, are harmless and domesticated, and are kept for convenience or use, such as dogs ... are not liable for injuries willfully committed by them unless he is proved to have had notice of the inclination of the particular animals complained of to commit such injuries."); *see*

*also Artificial Ice & Cold Storage Co. v. Martin*, 102 Ind.App. 74, 198 N.E. 446, 448 (1935). As with wild animals this liability also attaches regardless of the amount of care exercised by the owner. However, unlike with wild animals, when the owner of a dog has knowledge of its dangerous propensities, "[the] rules of liability are based upon negligence and not strict liability." *Alfano v. Stutsman*, 471 N.E.2d 1143, 1144 (Ind.Ct.App.1984) (quoting *Doe v. Barnett*, 145 Ind.App. 542, 251 N.E.2d 688, 694 (1969)). Because it is an action sounding in negligence, the defenses of contributory negligence and assumption of risk are available to limit this liability. *Borton v. Lavenduskey*, 486 N.E.2d 639, 642 (Ind.Ct.App.1985), *trans. denied.*

In certain instances, a cause of action in negligence can survive without the owner's actual knowledge of the animal's dangerous propensities. Indeed, such knowledge may even be constructive. *Doe*, 251 N.E.2d at 692. Nonetheless, when an owner does not know of his animal's dangerous propensities, the rule is not that the jury may infer or impute such knowledge. Rather, "the rule is that the owner is bound to know the natural tendencies of the *particular class* of animals to which [the] dog belongs." *Ross*, 605 N.E.2d at 788 (emphasis added). If the propensities of the class to which the dog belongs are the kind which one might reasonably expect would cause injury, then the owner must use reasonable care to prevent injuries from occurring. *Id.*

■ Thus, where there is no evidence of an owner's actual knowledge that his or her dog has dangerous propensities, the owner may nonetheless be held liable provided there is evidence that the particular breed to which the dog belongs has dangerous propensities. And this is so even where the owner's dog has never before attacked or bitten anyone. *See, e.g., Holt*

*v. Myers,* 47 Ind.App. 118, 93 N.E. 1002, 1002–03 (1911) (observing that the ferocious nature of a bulldog was sufficient to provide the owner with constructive notice of the dog's dangerous propensities). In essence, a jury may not infer that an owner knew or should have known of a dog's dangerous or vicious propensities from the fact of a first time, unprovoked biting. Rather in such an instance, a jury may infer that the owner knew or should have known of the dog's dangerous or vicious propensities only where evidence shows that the particular breed to which the owner's dog belongs is known to exhibit such tendencies.

 In the case before us, there was no evidence presented that Horvath had any knowledge that Hey exhibited dangerous or vicious propensities. The record shows Hey was very well trained, behaved well, responded when Horvath called to him or told him to stay. Hey did not wander out of Horvath's yard or wander around the neighborhood. The record also shows that Horvath never received any complaints about Hey's conduct or behavior. And even though Horvath's home was near an elementary school, Hey did not get excited or nervous when he heard children playing, screaming or making loud noises. Nor was there any evidence presented to the trial court that the breed to which Hey belonged, a mixed-breed sheep dog, exhibited dangerous or vicious propensities. Accordingly, a jury could not infer that Horvath knew that his dog was dangerous or vicious.

On the question of whether there is any genuine issue of material fact that Horvath knew or should have known of Hey's vicious tendencies, we affirm the judgment of the trial court. The Court of Appeals' opinion on this point is thus vacated. We summarily affirm the Court of Appeals' resolution of the Poznanskis' claim that

Horvath could be held liable under the local ordinance requiring proper restraint of animals.

### Conclusion

We affirm the judgment of the trial court in part. This cause is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.