**Rick TUCKER, Appellant–Defendant,**

v.

**Deborah DUKE, Appellee–Plaintiff.**

No. 05A05–0612–CV–706.

Court of Appeals of Indiana.

Sept. 19, 2007.

Robert G. Forbes, Forcum, Forbes, Danielson & Danielson, LLP, Hartford City, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

Rick Tucker ("Tucker") appeals from the small claims court's judgment in favor of Deborah Duke ("Duke") on her claim for medical expenses stemming from a dog biting incident. Because the evidence shows that Tucker kept the dog—a pit bull—on his property staked to a chain for four months and that the pit bull became loose on the day in question and attacked Duke on her own property, the small claims court's judgment that Tucker is liable on grounds of negligence is not clearly erroneous. We therefore affirm the small claims court.

### Facts and Procedural History

In February 2006, Rayna Hall ("Hall") began keeping her pit bull at her boyfriend Tucker's house, which he was renting, in Hartford City, Indiana. Although Hall did not live with Tucker, Tucker gave her permission to keep her pit bull in the backyard of his house. According to Hall, the dog did not have a history of violence. The pit bull was kept on a chain, which was staked in the ground.[1]

On the afternoon of June 6, 2006, Duke was working in her yard when the pit bull approached her. When Duke reached for the dog's tag so that she could contact its owner, the dog attacked her, biting her several times on her hand, arms, and shoulder. Duke ran inside her house and called the police. Shortly thereafter, the police and animal control arrived on the scene. When the animal control officer tried to catch the pit bull, the dog attacked her as well, breaking bones in both of her hands. As a result, the police shot and killed the pit bull.

Hall, who previously had two pit bull shar-pei mixes put to sleep because they exhibited dangerous propensities, was unable to explain how the dog became loose on the day in question; the stake was in the ground, and the chain was not broken. Duke later developed an infection from the dog bites and had to undergo surgery. Duke's medical bills totaled $6281.35.

On August 1, 2006, Duke, *pro se,* filed a Notice of Small Claim Lawsuit against Hall and Tucker.[2] Following a trial, the small claims court entered Findings of Fact and Judgment,[3] which provides, in pertinent part:

5. The Court finds that the dog which attacked the Plaintiff was what appeared

---

1. Hall described the stake and chain as follows: "It was a stake that goes down in the ground and has prongs on it and it was a heavy, like a smaller sized small chain, not a great big one but it was a pretty thick small chain." Tr. p. 36.

2. Hall also named the owner of the property that Tucker rented as a defendant. However, the owner was later dismissed from the lawsuit with prejudice.

3. Although the small claims court here entered findings of fact, it was not required to do so. As the Indiana Supreme Court explained in *Bowman v. Kitchel*:

The formal entry of findings of fact and conclusions of law is contrary to the policy enunciated in Small Claims Rules 8 and 11 [, which provide that small claims trials are informal and require only that small claims judgments "shall be reduced to writing"]. Small claims courts and the small claims divisions of general jurisdiction courts are intended to be places where justice may be dispensed inexpensively and promptly, and indeed, Indiana's courts bring nearly 250,-000 such cases to final judgment each year. 644 N.E.2d 878, 879 (Ind.1995).

to be a pit bull breed and, in fact, belonged to the Defendant, Rayna K. Hall.

6. The Court finds the Defendant, Rick Tucker, is the boyfriend of Defendant, Rayna K. Hall, and he had allowed Ms. Hall to keep the dog on his rented premises wherein the dog was kept outside on a chain.

7. The Court finds that the Defendant, Rick Tucker, denies liability on the basis that he did not exercise any ownership or control over the dog but simply provided a location wherein Ms. Hall kept her dog. The Court finds that the Defendant, Rick Tucker, while not the actual owner of the dog, is liable on the basis that he was harboring the dog which includes the act of affording lodging or shelter.

8. The Court finds that it[']s common knowledge in the community that Defendant, Rick Tucker, operates a business from the location where he resides and that he and his business may have been provided a benefit by having a dog chained on his property which would keep potential trespassers away.

\* \* \* \* \*

10. The Court finds that based on the type of dog and the fact that the Defendant kept her dog chained to the ground at a location where she did not reside, she was negligent with respect to the control of her dog and negligent in keeping her dog off of the Plaintiff's property. The Court further finds that by failing to supervise the dog, it is unknown how long the dog was allowed to roam the neighborhood.

\* \* \* \* \*

14. The Court finds that while staking a dog to a suitable chain in the yard may under some circumstances constitute reasonable steps to restrain a dog, failure of the Defendant, Rayna K. Hall, to keep the dog on premises where she resided under frequent supervision and the maintaining of the dog on a chain for a lengthy period of time, approximately four months, ... constitutes the failure to take reasonable steps to restrain her dog.

15. The Court finds the Defendant, Rayna K. Hall, had a duty to others, including the Plaintiff, to restrain her dog and she negligently failed to do so resulting in Plaintiff's injuries.

16. The Court finds that by harboring a dog on his premises, and then failing to exercise reasonable supervision and control over the animal, the Defendant, Rick Tucker, committed negligent conduct.... [4]

Appellant's App. p. 4–6. Accordingly, the small claims court entered "judgment against the Defendants, Rayna K. Hall and Rick Tucker, in the amount of $6,000.00, plus interest at eight percent simple interest from the date of judgment until paid in full, plus costs in the amount of $92.00

---

4. The small claims court also concluded that Tucker "recklessly failed to take reasonable steps to restrain the dog making sure the dog remained restrained on his premises." Appellant's App. p. 6. The court apparently made this conclusion based on Indiana Code § 15–5–12–3(a), which makes it a Class C misdemeanor if an owner of a dog

recklessly, knowingly, or intentionally fails to take reasonable steps to restrain the dog and:

(1) the dog enters property other than the property of the dog's owner; and
(2) as the result of the failure to restrain the dog, the dog bites or attacks another person resulting in unprovoked bodily injury to the other person.

Because this case does not involve Tucker's criminal liability, we do not discuss either reckless conduct or this statute.

representing the Plaintiff's original filing fee." *Id.* at 6. Tucker then filed a motion to correct error,[5] which the court denied after a hearing. Tucker now appeals.

## Discussion and Decision

Tucker appeals the small claims court's judgment in favor of Duke. We note at the outset that Duke has failed to file a brief in this appeal. "When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006). "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (citing *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App.1999)). "Where an appellant is unable to meet this burden, we will affirm." *Id.*

■ Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes."[6] Ind. Small Claims Rule 11(A). When reviewing claims tried by the bench without a jury, the reviewing court shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Counceller v. Ecenbarger, Inc.,* 834 N.E.2d 1018, 1021 (Ind.Ct.App.

2005). A judgment in favor of a party having the burden of proof, *i.e.,* Duke, will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of the evidence. *Id.* This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Id.*

■ On appeal, Tucker argues, "The trial court's decision is in error because there was absolutely no evidence that Tucker knew or should have known of any vicious propensity on the part of that dog. . . ." Appellant's Br. p. 4. "Under our common law, all dogs, regardless of breed or size, are presumed to be harmless domestic animals." *Poznanski ex rel. Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003). This presumption is overcome by evidence of a known or dangerous propensity as shown by specific acts of the animal. *Id.* A dangerous propensity is a tendency of the animal to do any act that might endanger the safety of persons or property. *Id.* Depending on the facts of a particular case, a dog's unprovoked biting may be evidence of the dog's vicious tendencies. *Id.* In this case, the pit bull attacked Duke and then the animal control officer, resulting in serious injuries to both people. Under these circumstances, the trier of fact could reasonably conclude that the dog exhibited vicious tendencies.

■ The question remains whether, in light of a dog exhibiting dangerous or vicious tendencies for the first time, the

---

5. Tucker did not include the motion to correct error in his appendix.

6. We note that contrary to Indiana Appellate Rule 46(A)(8)(b), Tucker did not include "a concise statement of the applicable standard of review."

trier of fact may reasonably infer that the dog's owner knew or at least should have known of those tendencies. *Id.* at 1259. When wild animals are kept as pets, the owner is liable for injuries caused by the animal. *Id.* This is so even if the owner had no prior knowledge of the animal's propensity to cause harm and has exercised the utmost care in preventing harm. *Id.* "In essence, strict liability is imposed on owners of wild animals." *Id.* Owners [7] of domestic animals may also be held liable for harm caused by their pets but only if the owners know or have reason to know that the animals have dangerous propensities. *Id.* As with wild animals, this liability also attaches regardless of the amount of care exercised by the owner. *Id.* "However, unlike with wild animals, when the owner of a dog has knowledge of its dangerous propensities, '[the] rules of liability are based upon negligence and not strict liability.' " *Id.* (quotation omitted).

 In certain situations, a cause of action in negligence can survive without the owner's actual knowledge of the animal's dangerous propensities. *Id.* "Indeed, such knowledge may even be constructive." *Id.* Nonetheless, when an owner does not know of his or her animal's dangerous propensities, the rule is not that the trier of fact may infer or impute such knowledge. *Id.* Rather, "the rule is that the owner is bound to know the natural tendencies of the particular class of animals to which [the] dog belongs." *Id.* (quotation omitted). If the propensities of the class to which the dog belongs are the kind that one might reasonably expect would cause injury, then the owner must use reasonable care to prevent injuries from occurring. *Id.*

As such, where there is no evidence of an owner's actual knowledge that his or her dog has dangerous propensities, the owner may nonetheless be held liable provided there is evidence that the particular breed to which the dog belongs has dangerous propensities. *Id.* "And this is so even where the owner's dog has never before attacked or bitten anyone." *Id.* In essence, the trier of fact may not infer that an owner knew or should have known of a dog's dangerous or vicious propensities from the fact of a first time, unprovoked biting. *Id.* at 1260. Rather, in such an instance, the trier of fact may infer that the owner knew or should have known of the dog's dangerous or vicious propensities only where evidence shows that the particular breed to which the owner's dog belongs is known to exhibit such tendencies. *Id.*

Tucker claims that "[t]here was no evidence presented in this case" "to support a finding of vicious propensity based upon the type of dog." Appellant's Br. p. 6. At trial, Hall testified that her dog, a pit bull, did not have a history of violence. However, Hall also testified that she previously had two pit bull shar-pei mixes put to sleep because they exhibited dangerous propensities. At the hearing on Tucker's motion to correct error, the parties discussed the pit bull breed in depth. Acknowledging the dearth of evidence presented at trial regarding the pit bull breed, the small claims court explained:

> I think the trier [of] fact whether it's a jury or whether it's a judge has to apply

---

**7.** Although Tucker was not the owner of the pit bull, it is undisputed that he was the keeper of the dog at the time that it bit Duke. Nevertheless, the same principles apply. *See Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 275 (Ind.2003) ("Thus, whether the *owner or*

*keeper* of the animal is aware of any vicious propensity, the legal description of the duty owed is the same: that of reasonable care under the circumstances.") (emphasis added). Tucker does not contend otherwise.

common sense and common knowledge gained from day to day living and that's what we instruct jurors [in] jury trials. You don't have to watch the news very often to have at least some understanding of the nature and propensities of an American Pit Bull dog. In fact, just as an example, on the day that I think you filed this or was first brought to my attention there was an evening news report where a little girl had most of her face virtually bit off by an American Pit Bull and I think as a result of that they are going to put in additional legislation with respect to dogs. But clearly this particular type of dog was physically capable of infl[i]cting serious injury to someone. Because it did. It's kind of like it happens and so you can't say that dog's not capable of infl[i]cting serious injury to someone.... [A]s most common people would know the physical attributes of an American Pit Bull as being capable of infl[i]cting serious injury to someone. The size of the dog, the muscular structure of the dog, I believe the American Pit Bull along with the English Bulldog and common (inaudible) are referred to as the fighting breeds. While they're part of the fighting breeds because of certain attributes or physical physicality they have.[8]

Tr. p. 47–48. As such, the small claims court concluded:

And I believe under these circumstances that the actions of the Defendant, Mr. Tucker, in having this dog staked to the ground for approximately four months on his property without exercising care and supervision or interaction with this dog, that there is no evidence presented by Mr. Tucker or the other Defendants

to show that this dog was clearly supervised on a regular basis, that it was trained, that it had any kind of human socialization done to it. It was staked out on the ground to apparently be socialized by strays or wild animals. There was no evidence that this dog was was [sic] treated as a pet. It didn't live in a home with a family. It was a dog that was staked out on the ground and left to whatever would happen. And when you leave a dog staked out on the ground for four months and it's not a pet, it's not socialized, it's not trained, there's no evidence that that creates a substantial risk to other persons in the community. And it's on that basis that I find based on the specific facts of this case that Mr. Tucker was liable on a negligence basis....

*Id.* at 48. Accordingly, the small claims court denied Tucker's motion to correct error.

It is true that there was no evidence presented at the small claims trial that Tucker possessed actual knowledge that the pit bull had dangerous propensities. However, this does not mean that Tucker cannot be held liable. The trier of fact may infer that Tucker "knew or should have known of the dog's dangerous or vicious propensities only where evidence shows that the particular breed to which the owner's dog belongs is known to exhibit such tendencies." *Poznanski,* 788 N.E.2d at 1260. The small claims court correctly made such an inference here. That is, the evidence presented at trial shows that pit bulls are known to exhibit dangerous or vicious tendencies in that Hall previously had two pit bull shar-pei mixes put to sleep for that very reason.

---

**8.** At the beginning of the hearing on Tucker's motion to correct error, the trial court denied taking judicial notice at trial that pit bulls have dangerous propensities. On appeal,

Tucker does not raise any issue regarding judicial notice; therefore, we do not address it.

Evidence was also presented at trial that the pit bull, which was not kept as a pet, was chained to a stake in Tucker's backyard for four months. The reasonable inference from this is that the pit bull became dangerous or vicious because it was chained up with no apparent training or socialization for such a long period of time. Accordingly, the small claims court could infer that Tucker knew or should have known that the pit bull was dangerous or vicious. The court's judgment that Tucker was negligent for failing to exercise reasonable supervision and control of the pit bull is not clearly erroneous. Because Tucker has failed to show prima facie error, we affirm the judgment of the small claims court.

Affirmed.

BRADFORD, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent. The majority acknowledges that "there was no evidence presented at the small claims trial that Tucker possessed actual knowledge that the pit bull had dangerous propensities." Op. at 670. The majority nonetheless concludes, based on evidence that Hall previously had two pit bull-sharpei mixes put to sleep for exhibiting possible signs of viciousness and evidence that the pit bull was chained to a stake in Tucker's backyard for four months, that Tucker "knew or should have known that the pit bull was dangerous or vicious." *Id.* at 671. I disagree.

Hall testified as follows regarding the two pit bull-sharpei mixes she previously had owned:

> They never bit a person. Ever. I just seen [sic] signs where I thought that maybe, there might be something

wrong, and yes, I gave over them [sic]. . . . I wouldn't, I don't want to have a dog that's mean.

Tr. at 24. Hall also testified as to her arrangement with Tucker:

> He had nothing to do with my dog. . . . He did it as a favor to me to let me keep him there. I was looking for a home for him and he had no contact with him. I put him out toward the back and me and my children took care of my dog.

*Id.* at 25. Finally, Hall testified as to the temperament of her dog:

> Q: And did this dog have any history of any violence or (inaudible) behavior at all?
>
> A: No. No.
>
> Q: Had this dog been around kids?
>
> A: Lots.
>
> Q: Okay. Never had any problems with kids?
>
> A: No.
>
> Q: Okay. Had any problems with your dog or anybody else had?
>
> A: No. He loved everybody.

*Id.* at 36–37.

I agree with the majority that there is no evidence that Tucker had actual knowledge that the dog was dangerous. I also agree with the majority that the law in Indiana is that even where there is no evidence of actual knowledge, there can still be liability if there is evidence that the particular breed to which the dog belongs has dangerous propensities. *See Poznanski,* 788 N.E.2d at 1259. I part ways with the majority, however, with respect to its conclusion that there was such evidence in this case. The majority notes evidence that Hall had two pit bull-sharpei mixed breed dogs put to sleep because they exhibited dangerous tendencies. There was no evidence that *this* dog was a pit bull-

sharpei mix, however.[1] Moreover, Hall testified that her dogs never bit anyone, but she had them put to sleep because she saw signs that there "*might* be something wrong." Tr. at 24 (emphasis added). Hall's testimony could support the conclusion that she would not keep a dog that she thought might be or become dangerous, and the fact that she kept this dog tends to counter the inference of any dangerous tendencies. Finally, there was no evidence that *Tucker* knew that Hall previously had the two dogs put to sleep. The majority also notes evidence that the dog was staked in Tucker's back yard for four months with "no apparent training or socialization." Op. at 671. However, there was evidence that Hall and her children were taking care of the dog. *See* Tr. at 26 (when Hall was asked if any person other than Tucker was watching the dog, she said, "Me, he was mine, so."). Hall did not elaborate on what "taking care of the dog" involved, but I do not believe it is reasonable to infer from the evidence that the dog had no interaction or care for the four months it was kept on Tucker's property.

In *Poznanski*, the court noted that there was no evidence the owner had knowledge that his dog exhibited dangerous or vicious propensities, and further noted that there was no evidence that the breed to which his dog belonged, a mixed-breed sheep dog, exhibited dangerous or vicious pro-

pensities. 788 N.E.2d at 1260. The court therefore concluded that a jury could not infer that the owner knew his dog was dangerous or vicious. *Id.* I believe this case, in which there was no evidence that Tucker had knowledge the dog exhibited dangerous or vicious propensities and no evidence that Tucker knew the breed to which Hall's dog belonged exhibited dangerous or vicious propensities, should have the same result. To hold otherwise is basically to hold as a matter of law that pit bulls are *per se* dangerous and vicious animals, without requiring evidence of such as we do for all other domesticated animals. In my view, *Poznanski* does not stand for the proposition that the viciousness of a particular breed can be inferred. Rather, *Poznanski* requires *evidence* of viciousness.[2] I believe the majority decision expands liability with respect to domestic animals beyond the bounds of *Poznanski*.

Although I agree it is unfortunate that Duke incurred medical expenses as a result of an injury that was not her fault, and I acknowledge that Duke was representing herself in the small claims trial and was probably unaware of the proof she needed to present to succeed on her claim, we are a court of law and must find as a matter of law that there is evidence to support holding someone else responsible.[3] I do not believe we can do so in this case.

---

**1.** In fact, Duke never stated the breed of dog in her testimony, nor did she elicit the breed during her cross-examination of witnesses. She referred to it only as a "dog." *See, e.g.,* Tr. at 6. On cross-examination of Hall by counsel for Tucker's landlord, however, it was established that Hall owned a "pit bull." Tr. at 25.

**2.** The majority opinion notes comments by the small claims court at the motion to correct error hearing in which the court "[a]cknowledg[es] the dearth of evidence presented at trial regarding the pit bull breed," Op. at 669, and states that "the trier [of] fact . . . has

to apply common sense and common knowledge. . . . [A]s most common people would know the physical attributes of an American Pit Bull as being capable of infl[i]cting serious injury on someone." *Id.* at 669–670 (quoting Tr. at 47).

**3.** Although I do not believe the evidence supports imposing liability on Tucker, I express no opinion about Hall's liability. I do note, however, that the judgment was against both Hall and Tucker, and as Hall has not joined this appeal, Duke would not be without recompense for her injuries if the judgment against Tucker was reversed.

I would reverse the judgment of the trial court against Tucker.