

# IN THE
# Court of Appeals of Indiana



FILED

May 07 2025, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Peggy S. McElhany,

*Appellant-Plaintiff*

v.

Jacob Grisham and Elizabeth Jordan,

*Appellees-Defendants*

---

May 7, 2025

Court of Appeals Case No.
24A-CT-2250

Appeal from the Hendricks Superior Court

The Honorable Robert W. Freese, Judge

Trial Court Cause No.
32D01-2304-CT-76

---

**Opinion by Judge May**
Judges Weissmann and Foley concur.

**May, Judge.**

[1] Peggy S. McElhany appeals following the trial court's order granting summary judgment in favor of Elizabeth Jordan.[1] McElhany argues the trial court erred by granting summary judgment in favor of Jordan because genuine issues of material fact exist regarding whether Jordan knew or should have known of her dog's dangerous propensities and whether Jordan negligently allowed her boyfriend to take the dog out into public places. We agree, and reverse and remand.

## Facts and Procedural History[2]

[2] On December 30, 2021, Indianapolis Marion County Animal Care Services received a report that a stray pit bull-mix dog "was hanging out beside" a dumpster. (Appellant's App. Vol. 2 at 141.) The dispatcher advised the animal control officer before she encountered the dog that it had "lunged at people[.]" (*Id*.) (capitalization removed). The officer used treats and canned food to coax the dog into the animal control truck and wrote in her report that he "never whipped or lunged at me as was reported but he did bark and low growl when I first approached." (*Id*.) While at the animal shelter, the dog was given trazadone for anxiety.

---

[1] Jordan's boyfriend, Jacob Grisham, is also named as a defendant. He did not join Jordan's motion for summary judgment, and he is not a party to this appeal.

[2] We held oral argument in this case on April 14, 2025, at Indiana University-East in Richmond. We commend counsel for their advocacy and thank the university's faculty, staff, and students for their warm reception and hospitality.

[3]     Jordan, who previously had adopted a pit bull named Lois from the animal shelter, adopted the dog on January 18, 2022, and named it Gus. Gus lived with Lois, Jordan, Jordan's boyfriend Jacob Grisham, and Jordan's two children in Danville, Indiana. While Lois did not require behavioral training after being adopted, Gus had "a lot of puppy energy," and Jordan hired Julie Allen of Koda's Dog Training to train him. (Appellee's App. Vol. 2 at 113.) On the intake form, Allen noted that Jordan and Grisham described Gus as "puppy bitey, not aggressive[.]" (Appellee's App. Vol. 3 at 78-79.) Allen marked on the intake form that Gus displayed "Aggression toward People" because Gus "was a little reactive when [Allen] first came up to the property" with her dog. (*Id.* at 79.) Gus barked and lunged toward them on his leash. Gus attended five training lessons with Allen, including one training session that occurred at Rural King.

[4]     During a veterinary visit for ear issues on December 12, 2022, the veterinarian placed a basket muzzle on Gus because he "tried to bite" a veterinary technician when she touched his left ear. (Appellant's App. Vol. 2 at 117.) The veterinarian also placed a basket muzzle on Gus during a follow-up visit on January 2, 2023. The veterinarian noted Gus "still hates being touched on the left ear" and "started to bark a lot ang [sic] growl more." (*Id.* at 116.)

[5]     Lois died on February 6, 2023. The next day, Grisham "was just feeling a little down" and "didn't really want to be in the house at the time." (Appellee's App. Vol. 2 at 195-96.) Grisham decided to go to Rural King to shop, and he took Gus with him. Grisham did not ask Jordan for permission to bring Gus

with him into Rural King because he "assumed it wasn't going to be a problem if [he] did." (Appellant's App. Vol. 2 at 92.)

[6] At Rural King, Grisham spoke with Kevin Bray, an employee in the power tool department. Bray asked Grisham "about the cut on the dog's left side of face near its eye and [Grisham] said he fell out of the truck." (*Id.* at 125.) Bray averred that then "[w]ith no warning the dog started snarling bit or snapped at me but did not make contact with me." (*Id.*) Grisham and Gus left the power tool section. McElhany was working as a customer service manager at the Rural King checkout counter, and Grisham and Gus approached her workstation with items to purchase. McElhany began scanning Grisham's items, and she asked Grisham if she could give Gus a Milk-Bone dog treat. Grisham said she could, and McElhany "handed the bone to the dog. The dog dropped the bone, so [McElhany] reached down to pick the bone up, regave the dog to [sic] the bone, tapped the dog on the top of the head." (*Id.* at 61.) Gus then lunged at McElhany and bit her in the face, causing lacerations to her nose and above her left eye.

[7] Following the incident, animal control quarantined Gus because he was not up to date on his rabies vaccinations. Gus was later returned to Jordan and Grisham. They took him to the veterinarian on February 17, 2023, because he displayed "some anxious behavior" and "[i]t seemed to be a stressful time with Lois passing and . . . there were a lot of changes at home[.]" (*Id.* at 85.) The veterinarian prescribed trazadone for Gus and recommended Gus be seen by a

veterinary behaviorist. The veterinarian also prescribed Prozac for Gus on March 14, 2023.

[8] On April 23, 2023, McElhany filed a complaint alleging negligence against both Jordan and Grisham. Jordan filed a motion for summary judgment on July 24, 2024. She argued "[n]either Jordan nor anyone else in her household had any knowledge of any vicious propensity of pit bulls. And . . . Jordan cannot be held liable for an incident that happened when she was not in control of Gus." (*Id*. at 19.) McElhany responded to Jordan's motion for summary judgment on August 23, 2024. She argued Jordan should have known about the dog's dangerous propensities based on Gus's behavior when he was captured by animal control, his medication history, and the need for him to be muzzled during veterinary visits. McElhany also designated an expert affidavit by Dr. Kenyon Conklin, V.M.D., in which Dr. Conklin noted: "It is well-described in lay literature that taking dogs (especially those with anxiety and other behavioral issues) into public places is frequently stressful and anxiety provoking to dogs." (*Id*. at 129.) Dr. Conklin concluded that "taking a dog with anxiety such as Gus into a public store makes it likely that he will escalate to aggressive behavior." (*Id*.)

[9] Jordan filed her reply in support of her motion for summary judgment on August 27, 2024, and the trial court held a hearing on Jordan's motion for summary judgment on August 28, 2024. The trial court summarily granted

Jordan's motion on August 29, 2024, and entered judgment in her favor pursuant to Trial Rule 56(C) and Trial Rule 54(B).[3]

## Discussion and Decision

[10] McElhany contends the trial court erred in granting summary judgment in favor of Jordan. We review a trial court's ruling on a motion for summary judgment de novo and apply the same standard as the trial court. *Schon v. Frantz*, 156 N.E.3d 692, 697 (Ind. Ct. App. 2020). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting Ind. Trial Rule 56(C)). We construe all reasonable inferences in favor of the non-moving party. *Allstate Ins. Co. v. Hatfield*, 28 N.E.3d 247, 249 (Ind. Ct. App. 2015). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id*.

---

[3] Trial Rule 54(B) provides:

> When more than one [1] claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . . A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less that all the claims and parties is not final.

(brackets in original). Therefore, the order granting summary judgment to Jordan constitutes a final appealable order even though McElhany's claim against Grisham, based on the same set of facts, remains pending.

"Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). "By definition, cases that hinge upon disputed facts are inappropriate for summary judgment, because 'weighing [evidence]—no matter how decisively the scales may seem to tip—[is] a matter for trial, not summary judgment.'" *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016) (quoting *Hughley*, 15 N.E.3d at 1005-06) (brackets in *Ind. State Fair Litig.*).

McElhany's complaint alleges negligence. "In order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004), *trans. denied*. "In negligence cases, summary judgment is rarely appropriate because such cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300 (Ind. Ct. App. 2009), *trans. denied*.

"Under our common law, all dogs, regardless of breed or size, are presumed to be harmless domestic animals." *Pozanski ex rel. Pozanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind. 2003). This presumption generally protects dog owners from liability for the acts of their dogs. *See*, *e.g.*, *Alfano v. Stutsman*, 471 N.E.2d 1143, 1146 (Ind. Ct. App. 1984) (holding dog owner was not negligent when his dog,

which had never bitten anyone before and was confined to the owner's yard, bit a child). However, the presumption may be "overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. A dangerous propensity is a tendency of the animal to do any act that might endanger the safety of persons or property in a given situation." *Pozanski*, 788 N.E.2d at 1258 (internal citation omitted).

[13] McElhany argues there is a genuine issue of material fact regarding whether Jordan knew or should have known Gus had dangerous propensities. McElhany relies on *Tucker v. Duke*, 873 N.E.2d 664 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*, to support her argument. In *Tucker*, Rayna Hall kept her pit bull at the house of her boyfriend Rick Tucker. *Id*. at 666. "The pit bull was kept on a chain, which was staked in the ground." *Id*. On June 6, 2006, the pit bull broke free of its chain and went into Deborah Duke's yard. *Id*. When Duke reached for the dog tag on its collar to identify the dog's owner, the dog bit her. *Id*. Duke sued both Hall and Tucker, and following a bench trial, the trial court entered judgment in Duke's favor. *Id*. at 667-68. The trial court also denied Tucker's motion to correct error. *Id*. at 668. We affirmed the trial court and held the trial court did not err in concluding Tucker should have drawn the inference that Hall's dog had dangerous propensities. *Id*. at 670. We noted "Hall previously had two pit bull shar-pei mixes put to sleep" because they exhibited aggressive behavior. *Id*. In addition, the dog "was not kept as a pet" and "was chained up with no apparent training or socialization[.]" *Id*. at 671.

[14]     Here, unlike the dog in *Tucker*, Gus was kept as a pet and did receive some training.  In addition, Gus was not kept chained in a yard.  However, like the dog in *Tucker*, Gus was predominantly of the pit bull breed, and while not all pit bulls are aggressive, "pit bulls are known to exhibit dangerous or vicious tendencies[.]"  *Id*. at 670.  Moreover, animal control apprehended Gus because he was lunging at the people who approached him while he was standing near a dumpster, and he barked and growled when the animal control officer approached him.  Gus also had anxiety and received trazadone while in the animal shelter after his capture.  Even though Jordan did not enroll Lois in behavioral training, she did think such training was necessary for Gus.  She reported Gus was "puppy bitey" during the training intake process, and Gus was sufficiently "reactive" toward Allen that Allen felt the need to mark on Gus's intake form that he displayed "Aggression toward People[.]"  (Appellee's App. Vol. 3 at 78-79.)  Gus also displayed aggressive behavior in the months leading up to the February 7, 2023, incident.  He twice had to be muzzled at the veterinarian's office because he tried to bite staff members when they touched his injured left ear.  Gus also had a cut on the left side of his face on February 7, 2023.  Moreover, it is not unreasonable to assume Lois's death caused Gus increased anxiety, as Jordan cited Lois's death as one of the stressful events she believed contributed to Gus's anxiety when she took him to the veterinarian on February 17, 2023.

[15]     Jordan argues Gus's behavior from the time she adopted him until the incident with McElhany was not out of the ordinary and did not rise to the level of

demonstrating a dangerous propensity. *See Poznanski*, 788 N.E.2d at 1258 ("For example, although technically a 'biting,' a playful nibble on the hand is one thing, while a 'teeth-baring' clamp on the arm is quite another."); *Alfano*, 471 N.E.2d at 1144-45 (holding dog did not exhibit a dangerous propensity even though it barked at people passing by and lunged against its chain). She notes Jordan, Grisham, and Allen all indicated in their deposition testimony that Gus was not more aggressive than a typical dog and had not bitten anyone before the February 7, 2023, incident. However, to reach the conclusion that Gus did not display dangerous propensities before the incident with McElhany, one must weigh that testimony against Gus's capture, veterinary, and training records, and the testimony of McElhany and Dr. Conklin. Thus, there is a genuine issue of material fact regarding whether Jordan knew or should have known Gus had dangerous propensities. *See, e.g.*, *R.P. Leasing, LLC v. Chemical Bank*, 47 N.E.3d 1211, 1217-18 (Ind. Ct. App. 2015) (holding summary judgment was inappropriate when the designated evidence led to conflicting inferences).

[16] Jordan also contends that even if Gus had demonstrated dangerous propensities before the February 7, 2023, incident, she is still entitled to summary judgment because she was not handling Gus when the incident occurred. Jordan was at work, and Grisham was handling the dog. However, Jordan did not tell Grisham not to take Gus out in public, and she confirmed in her deposition testimony that she would not have objected if Grisham had checked with her prior to taking Gus with him to Rural King. Jordan compares her case to

*Alfano*, wherein we held a dog owner was not negligent when he securely confined his dog to his yard and posted a sign warning those passing by to beware of his dog. 471 N.E.2d at 1146. However, in *Alfano*, the person the dog bit walked onto the private property where the dog was restrained. *Id.* at 1144. McElhany was in a public place when Gus bit her. It is a common experience that people approach and pet dogs they encounter in public. Moreover, it was common practice at the Avon Rural King for the cashiers to offer treats to dogs, and McElhany kept dog treats at her workstation. Given Gus's history of anxiety around people and his known sensitivity to being touched near his left ear, there is a genuine issue of material fact regarding whether Jordan was negligent in tacitly allowing Grisham to take Gus into public. *See*, *e.g.*, *Vetor by Weesner v. Vetor*, 634 N.E.2d 513, 516 (Ind. Ct. App. 1994) (holding genuine issue of material fact existed as to whether grandfather was negligent in not restraining a dog that bit his granddaughter). Therefore, we reverse the trial court's grant of summary judgment in favor of Jordan.

## Conclusion

[17] Jordan was not entitled to summary judgment because genuine issues of material fact exist regarding whether she knew or should have known of Gus's dangerous propensities before he bit McElhany and whether she was negligent in allowing Gus to be taken out in public. Accordingly, we reverse the trial court and remand for further proceedings consistent with this opinion.

[18] Reversed and remanded.

Weissmann, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

James A.L. Buddenbaum
Parr Richey Frandsen Patterson Kruse, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

John W. Mervilde
Kevin D. Lichtenberger
Schultz & Pogue, LLP
Indianapolis, Indiana