Charles **BAKER** and Betty Baker,
Appellants–Defendants,

v.

Ozell **WEATHER**, Jr., a minor by his next friends, Ozell **WEATHER** Sr., and Shirley Weather, Ozell Weather, Sr., and Shirley Weather, Individually, Appellees–Plaintiffs,

Melinda Baker and Steven Baker,
Appellees–Defendants.

No. 49A05–9807–CV–381.

Court of Appeals of Indiana.

July 28, 1999.

Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, Indiana, Attorney for Appellant.

Kevin Farrell, Angela J. Herod, Cline, Farrell, Christie & Lee, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Defendants–Appellants Charles Baker and Betty Baker appeal the trial court's denial of their motion for summary judgment in an action instituted by Plaintiffs–Appellees Ozell Weather, Jr., a minor by his next friends, Ozell Weather, Sr. and Shirley Weather, and Ozell Weather Sr. and Shirley Weather, individually, for dog bite injuries suffered by Ozell, Jr.

We reverse and remand.

### ISSUE

The following issue is dispositive: whether the trial court erred in denying Charles and Betty's motion for summary judgment where there is no evidence that they had knowledge of any vicious propensity of the dogs.

### FACTS

On August 1, 1995, Ozell Weather, Jr. was bitten by two Great Dane dogs as he played at the corner of the driveway on property located at 8333 East 36th Place, Indianapolis, Indiana (hereinafter, "the property"). The property was owned by Charles and Betty, who lived nearby. The property was rented to Charles and Betty's son and daughter-in-law, Steven and Melinda Baker. Steven and Melinda, along with their children, resided in the house on the property. Steve and Melinda owned the Great Danes and kept them in a fenced area of the backyard of the property.

Ozell Weather, Sr. and Shirley Weather, as individuals and as next friends of Ozell Weather, Jr., brought an action for damages against Steven and Melinda as owners of the Great Danes. They also brought an action against Charles and Betty as owners of the property. Charles and Betty filed a motion for summary judgment, which the trial court denied. The interlocutory order of denial was certified for appeal by the trial court.

Additional facts are disclosed below as necessary.

### DISCUSSION AND DECISION

Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App. 1998), *trans. denied.* The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind. Ct.App.1998). Although summary judgment is not usually appropriate in a negligence case, it is appropriate if the undisputed material facts negate at least one element of the plaintiffs' claim. *Muex v. Hindel Bowling Lanes, Inc.*, 596 N.E.2d 263, 265 (Ind.Ct.App. 1992).

■ In order to prevail on their claim against Charles and Betty, the plaintiffs were required to show that Charles and Betty retained control over the property. *See O'Connor by O'Connor v. Stewart*, 668 N.E.2d 720, 722 (Ind.Ct.App.1996). They were also required to show that Charles and Betty had actual knowledge that the Great Danes had dangerous propensities. *See Goddard by Goddard v. Weaver*, 558 N.E.2d 853, 854 (Ind.Ct.App.1990).

For purposes of this appeal, we will assume *arguendo* that Charles and Betty exerted control over the property, an issue we need not decide in view of our determination of the knowledge issue. We now turn to the

question of whether the designated evidence is sufficient to indicate a genuine issue of material fact on the question of whether Charles and Betty had actual knowledge that the Great Danes had dangerous propensities.

The designated evidence indicates that Charles and Betty had not received any complaints about the Great Danes' behavior. The evidence indicates that neither Steve and Melinda, the dogs' owners, nor Charles and Betty had any notice that the Great Danes had ever exhibited aggressive behavior. The evidence also indicates that Betty had never had any problems with dogs. The evidence further indicates that although Charles and Betty knew that the Great Danes had escaped from the property on past occasions by exiting the front door of the house, they did not know of any escape effected by jumping the recently-raised fence that constituted the dogs usual environment. In addition, the evidence, in the form of an affidavit by Shirley, indicates that the Great Danes had, on an unstated occasion, frightened her by chasing her before Ozell, Sr. ordered them to leave.

The plaintiffs contend that a reasonable inference of dangerous propensity could be drawn from the evidence pertaining to the Great Danes' prior escapes from the property, Charles's and Betty's knowledge of the prior escapes, the prior frightful chase of Shirley, and the presence of a statute making it a Class C infraction for an owner to allow a dog to stray from his property unless the dog was under the reasonable control of a person. *See* Ind.Code 15–5–9–13. The plaintiffs also appear to contend that knowledge of dangerous propensity can be inferred pursuant to our statement in *Vetor by Weesner v. Vetor*, 634 N.E.2d 513, 516 (Ind.Ct.App.1994) that "playful conduct" can indicate a dangerous propensity.

 This court has defined dangerous or vicious propensity as "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined." *Royer v. Pryor*, 427 N.E.2d 1112, 1117 (Ind.Ct.App.

1981) (*quoting Doe v. Barnett*, 145 Ind.App. 542, 251 N.E.2d 688, 694, (1969), *trans. denied*; 3A C.J.S. *Animals* § 180 (1973)). After stating this definition in *Royer*, we held that it is not reasonable to attribute dangerous or vicious propensities to a dog "merely because he barks at strangers, because a person is afraid of the dog, or because a city ordinance requires a dog to be restrained at all times." *Id.*

 Similarly, it is not reasonable to infer Charles's or Betty's actual knowledge of dangerous or vicious propensity of the Great Danes merely because the dogs have strayed, because Shirley was afraid of the dogs, or because a statute requires the dogs to be restrained. This is especially true where there is no evidence that Charles and Betty knew Shirley had been chased by the dogs. The suggested inference is also unreasonable because "the mere possession or ownership of land from which an animal strays is not sufficient to make the landowner liable, so long as the landowner is not the keeper of the animal." *Blake v. Dunn Farms, Inc.*, 274 Ind. 560, 413 N.E.2d 560, 563 (1980).

In *Vetor*, a child who was bitten by a dog while visiting her grandfather brought an action against her grandfather on the basis that he failed to used reasonable care for the child's safety. The trial court granted summary judgment for the grandfather. On appeal, we held that the designated evidence raised a question for the jury as to whether the grandfather used reasonable care. We emphasized that the grandfather was the owner of the property, that the dog was on the premises, that both the dog and the child were under the grandfather's supervision, and that the grandfather was in charge of the premises. We further emphasized that it was a question for the jury under these circumstances as to whether the grandfather was a keeper of the dog. The facts of *Vetor* differ significantly from the facts and circumstances of the present case; therefore, *Vetor* is inapposite. Furthermore, even if *Vetor* could be construed to apply to the facts of this case, we disagree with its holding that a "dangerous propensity on the part of the animal may be deduced from even playful

conduct." Therefore, we would decline to follow the case.

## CONCLUSION

The trial court erred in denying Charles and Betty's motion for summary judgment as the undisputed material facts negate at least one of the elements of the plaintiffs' claim.

We reverse and remand with instructions that the trial court grant summary judgment in favor of Charles and Betty.

RUCKER, J., concurs.

DARDEN, J., concurring in result with opinion.

DARDEN, Judge, concurring in result

I write to concur in the result reached by the majority but also to express my inability to support its statement of disagreement with the holding of *Vetor* "that a 'dangerous propensity on the part of the animal may be deduced from even playful conduct.'" Op. at 742–43. To me, the *Vetor* analysis as to whether an animal may be deduced to have a dangerous propensity is fact sensitive and must be conducted on a case-by-case basis. As an example of why I believe *Vetor* to be correct, I suggest an example with facts different than those before us. If the owner of a particularly large dog, such as a Great Dane, was aware of the dog's tendency to jump on people—conduct which the owner viewed as "playful,"—and that dog then jumped on a small child who was knocked down and injured, I believe that the inference of the owner's knowledge of the dog's dangerous propensity is permissible.

Furthermore, I believe the majority's view contradicts our holding in *Royer v. Pryor*, 427 N.E.2d 1112, 1117 (Ind.Ct.App.1981), wherein the court held:

> To overcome the presumption that a domestic, as opposed to a wild, animal is harmless, one must point to a known vicious or dangerous propensity of the animal in question. A dangerous or vicious propensity has been defined in Indiana as "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situa-

tion. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined." *Doe v. Barnett* (1969) 145 Ind.App. 542, 251 N.E.2d 688, 694, *trans. denied* (1970). *See also,* 3A C.J.S. *Animals* § 180 (1973).

For this reason, I agree with the holding of *Vetor.*