**Alrita MOREHEAD, Appellant,**

v.

**Duane DEITRICH, Appellee.**

No. 09A04–1003–CT–172.

Court of Appeals of Indiana.

Sept. 1, 2010.

Courtney B. Justice, Robert D. Eaglesfield, Justice Law Offices, Logansport, IN, Attorneys for Appellant.

James H. Austen, Starr Austen & Miller, LLP, Logansport, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Alrita Morehead appeals the trial court's entry of summary judgment in favor of Duane Deitrich.

We affirm.

### ISSUE

Whether the trial court erred in granting summary judgment to Deitrich.

### FACTS

The facts most favorable to Morehead as the non-moving party indicate that in 2006, Deitrich owned a single-family dwelling at 1420 Usher Street (the "Property") in Logansport. On or about September 3, 2006, Deitrich met with Angel Todd and Steve Sanders, who were interested in renting the Property. Sanders informed Deitrich that he had a "large male pit bull dog," weighing over fifty pounds. (App.102).

On or about September 15, 2006, Todd and Sanders entered into a year-long rental agreement (the "Agreement") with Deitrich for the lease of the Property. The Agreement provided, in part, as follows: "Absolutely NO pets are allowed unless authorized by the Landlord." (App.108). Deitrich made an exception for Todd and Sanders' pit bull because it had been with the family for seven years, and "they assured [him] it was a well-behaved dog." (App.67). Nevertheless, Deitrich expressed concern about the dog because of the breed's "reputation for viciousness[.]" (App.102).

Deitrich had a key to the Property and visited approximately every six weeks to collect rent and money for the gas bill. At first, the dog would bark at Deitrich and behave "in a hostile manner" toward Deitrich. (App.102). Sanders warned Deitrich that "the dog was very hostile to strangers, and that the dog had been trained to dislike people who wore a uniform, and non-white people." (App.102).

On February 21, 2007, Morehead, a postal carrier, was delivering mail on Usher Street. After depositing mail in the Property's mailbox, Morehead started walking to the next house on her route. As she walked down the public sidewalk, Morehead "heard a sound behind [her]," which she believed "was probably the dog hitting the door." (App.49). She turned around and saw a "dog right there," with his "mouth open, barking." (App.49). Morehead lunged back, "trying to keep distance between [her] and the dog. . . ." (App.49). The dog, however, bit Morehead's right breast.

On November 26, 2008, Morehead filed a complaint for damages against Deitrich. Deitrich filed his answer on January 23, 2009.

On May 14, 2009, Deitrich filed a motion for summary judgment and memorandum in support thereof. He argued that he "did not retain any right of control over the [Property] and had no knowledge that

the dog owned by Todd had any vicious propensity." (App.31). In support of his contention that he did not retain any control over the Property, Deitrich averred that "Todd and Sanders mowed the lawn and took care of routine upkeep at the house. While [he] had a key, he did not use it and did not unilaterally enter the house when Todd and Sanders were not there." (App.38).

Morehead filed her response to Deitrich's motion on July 10, 2009. She asserted that Deitrich failed to meet his burden of establishing that no genuine issue of material fact exists as to his control over the Property because Deitrich "retained control of the [Property] to regularly visit and inspect the house where the dog was present." (App.90). On July 27, 2009, Deitrich filed his reply, asserting that he was entitled to summary judgment because Morehead had failed to "designate[ ] evidence to show that [he] retained control" of the Property. (App.114).

The trial court held a hearing on Deitrich's motion on August 7, 2009. On December 22, 2009, the trial court entered its order, stating, in part, as follows:

> [O]n February 21, 2007, [Todd and Sanders] had exclusive use and possession of the [Property] subject to the terms of their agreement with Mr. Dietrich [sic].... Although Mr. Deitrich retained a key to the [P]roperty, he was not a regular visitor to the [P]roperty and he did not enter the [Property] without the lessees being present.
>
> . . . .
>
> Decisions in Indiana cases which address whether liability should be imposed on a landlord for the injuries to another person caused by a tenant's dog have established a two prong test for landlord liability. The first prong of that test is whether the landlord retains some control over the premises where the dog is kept. The second prong of the test is whether the landlord had knowledge, at the time of the injury caused by a dog, of the dog's vicious propensity.
>
> The designated material offered by the Defendant asserts that Mr. Deitrich did not have knowledge that Ms. Todd's dog was vicious or had a propensity to be vicious. However, the assertion is challenged by the Affidavit of Steve Sanders provided by Plaintiff. Therefore, construing this evidence in a light most favorable to a non-moving party there is a genuine issue of material fact that can only be resolved by a trial. The Plaintiff prevails on the second prong of the test.
>
> However, the same cannot be said for the first prong of the test. There is no genuine issue of material fact on this first prong. The degree of control reserved to Mr. Deitrich by the provision of the lease relied on by the Plaintiff to counter Mr. Deitrich's position that he merely stopped by from time to time to collect payments does not rise to the level of control of property as that term is defined in Indiana law. The evidence designated by the Plaintiff does not contradict the Defendant's assertions that he did not enter the premises without notice to the lessees, that he was not responsible for lawn maintenance or that there were no common areas adjoining the premises that he controlled. The lease provision relied on by the Plaintiff is common in lease agreements. *Olds v. Noel,* 857 N.E.2d 1041[ ] (Ind.Ct.App. 2006) sets the standard of review of whether a landlord retains control of leased premises. Even in the light most favorable to the non-moving party, the evidence designated by the parties leads only to the conclusion that Mr. Deitrich did not retain control of the [Property]

and he is entitled to summary judgment as a mater [sic] of law. Defendant's Motion for Summary Judgment is granted.

(App.126–28).

Morehead filed a motion to correct error on January 6, 2010. The trial court denied the motion on March 10, 2010.

## DECISION

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.*, 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App.1991).

All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried his initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind. Ct.App.1993), *trans. denied.* If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

"Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Mills v. Berrios*, 851 N.E.2d 1066, 1069 (Ind.Ct.App.2006) (quoting *Bennett v. CrownLife Ins. Co.*, 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002)). We review a question of law de novo. *Id.* "Finally, if the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm." *Beck v. City of Evansville*, 842 N.E.2d 856, 860 (Ind.Ct. App.2006), *trans. denied.*

■ In order to prevail against a landowner for the acts of a tenant's dog, the plaintiff must "demonstrate both that the landowner[ ] 'retained control over the property' and 'had actual knowledge that the [dog] had dangerous propensities.'" *Jones v. Kingsbury*, 779 N.E.2d 951, 953 (Ind.Ct.App.2002) (quoting *Baker v. Weather ex rel. Weather*, 714 N.E.2d 740, 741 (Ind.Ct.App.1999)). The absence of either component will result in a finding for the landowner. *Id.*

■ In this case, Deitrich concedes that he knew of his tenants' dog's propensity to be vicious, and Morehead concedes that Deitrich "did not have control of the [Property] when the dog escaped and bit" her.[1]

---

1. Both Morehead and the trial court relied on Sanders' affidavit in finding that Deitrich knew of the dog's vicious tendencies. Morehead further relies on the affidavit in asserting that Deitrich knew of these tendencies at the time he entered into the Agreement. The affidavit, however, only states that "[b]efore Deitrich became acquainted with the pitbull [sic], Sanders warned him that the dog was very hostile to strangers, and that the dog had

Morehead's Reply Br. at 1. Given Morehead's concession, Deitrich is entitled to summary judgment.

Morehead, however, asserts that Deitrich's knowledge of the dog's vicious propensities at the time he entered into the Agreement with Todd and Sanders "makes this case an exception to the general rule that possession and control of the premise[s] at the time of harm determines a landlord's liability." Morehead's Br. at 10. Thus, Morehead seems to argue that Deitrich had a duty "to prevent a dangerous condition" under the theory of premises liability. *Id.*

■ To recover on a theory of negligence, a plaintiff must establish three elements: (1) the defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to that standard of care, and (3) an injury to the plaintiff proximately caused by the breach. *Estate of Heck ex rel. Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind.2003), *reh'g denied.*

> The question of whether a duty is owed in premises liability cases depends primarily upon whether the defendant was in control of the premises when the accident occurred. "The rationale behind this rule 'is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm.'" Although whether a duty exists usually is a question of law, the existence of a duty sometimes depends upon underlying facts that require reso-

> lution by the trier of fact, and this may include questions regarding who controlled property at the time and place of an accident. "Possession and control of property for premises liability purposes has been described as a question of fact involving occupation and intent to control the particular area where the injury occurred."

*Yates v. Johnson County Bd. of Comm'rs,* 888 N.E.2d 842, 847 (Ind.Ct.App.2008) (internal citations omitted).

■ However, "[a]ctual physical possession of property at the precise moment an accident happens is not always dispositive on the question of 'control' for premises liability purposes, if there was evidence that another party was in a better position to prevent the harm that occurred." *Id.* at 848. Citing to this exception, Morehead argues that "the first prong of control was misapplied by the trial court," and "animal cases are inapposite to the facts in this case, where the evidence that the landlord prior to the lease permitted a known dangerous condition to be created and to exist on his property during the term of the lease." Morehead's Br. at 8. Morehead cites to several cases, which have found an exception to the rule that liability depends on control at the time of the harm.

In *Yates,* for example, the Edinburgh Community School Corporation (the "School Corporation") allowed the Town of Edinburgh (the "Town") to host a circus on land owned by the School Corporation. A set of stairs remained on the land. As Yates descended the stairs, she fell. Yates

been trained to dislike people who wore a uniform, and non-white people." (App.102). As to Deitrich's knowledge of the dog prior to entering into the Agreement, Sanders' affidavit only states that Sanders "told Deitrich that [Todd] had ... a large male pitbull [sic] named Abith which weighed over fifty pounds." *Id.* Thus, it is not entirely clear that

Sanders informed Deitrich of the dog's tendencies prior to, or at the time of, entering into the Agreement. Nevertheless, Deitrich concedes that "because of conflicting designated evidence, he had knowledge of the dog's vicious propensities prior to the signing of the lease." Deitrich's Br. at 2 n.1.

brought an action against the School Corporation, which moved for summary judgment under the basis that it did not owe Yates a duty. The trial court granted the School Corporation summary judgment, finding that it had given up "possession and control" of the land to the Town for the duration of the circus. 888 N.E.2d at 847.

On appeal, however, the *Yates*-court determined that there were "reasons to conclude the School Corporation owed a duty to Yates." *Id.* at 848. Specifically, even if the School Corporation did not control the property at the time of Yates' accident, "the School Corporation built and was in charge of maintaining the stairs." *Id.* Thus, "[i]f the stairs were unsafe to climb or descend, because of faulty design, a lack of handrails, or lack of lighting, the School Corporation was in the best position to remedy that situation." *Id.*

In *Rhodes v. Wright,* 805 N.E.2d 382 (Ind.2004), the owners of a farm raised chickens under a contract with Tyson Foods, Inc. ("Tyson"). A Tyson employee struck another employee with a forklift while they were collecting chickens from the farm at night. At the time of the accident, there were no lights in the loading area. The employee's estate sued the farm owners for negligence. The trial court granted the owners summary judgment. This court had affirmed summary judgment "because it found that [the owners] did not owe a duty to [the employee] because they did not exert control over the area where the accident occurred when it occurred." 805 N.E.2d at 385.

On transfer, the Indiana Supreme Court looked to Indiana law to determine whether the owners of the farm owed a duty to the employee. As in other premises liability cases, the court found that "whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Id.* This rule "subject[s] to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *Id.*

The *Rhodes*-court, however, determined that "even if Tyson controlled the premises while it caught chickens, that would not automatically relieve [the owners] of responsibility for injuries to Tyson's employees" as the farm owners had always controlled the external lighting on the farm, the lack of which "may have contributed to the accident." *Id.* Finding a dispute in fact "as to whether Tyson or [the owners] controlled the area where the accident occurred at the time it occurred and because [the owners] controlled the external lighting that may have contributed to [the employee's] death," the Indiana Supreme court found summary judgment inappropriate on this issue.

In *Walker v. Ellis,* 126 Ind.App. 353, 129 N.E.2d 65, 73–74 (1955), this court recognized that "[i]t is, of course, the general and elementary rule that liability in tort is an incident to occupation and control, or, as otherwise stated, that possession and control determine the liability." The court, however, found an exception to the rule where the landowner knew that a dangerous condition existed on the property; that the property would be used or visited by the public; and that the public would be exposed to that dangerous condition. *See id.*

The above-cited cases address liability arising from dangerous conditions on properties. A "dangerous condition" is defined as a "property defect creating a substantial risk of injury when the property is used in a reasonably foreseeable manner." BLACK'S LAW DICTIONARY 314 (8th ed.2004).

We decline to find Todd and Sanders' dog to be a property defect.[2]

▮▮▮ Here, a faulty or dangerous condition of the Property did not cause Morehead's injury. Rather, the tenants' dog escaped the Property and bit Morehead as she walked along a public sidewalk.

[I]t is the duty of the owner and the keeper of the animal to keep him confined, and the mere possession or ownership of land from which an animal strays is not sufficient to make the landowner liable, so long as the landowner is not the keeper of such animal. This is and has always been the law in Indiana. If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not from the condition of the land. To the extent that the condition of the land made it inadequate or unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal.

*Blake v. Dunn Farms, Inc.*, 274 Ind. 560, 413 N.E.2d 560, 563 (1980) (internal citation omitted). The undisputed facts are that Deitrich was neither the owner nor the keeper of his tenants' dog. Thus, as a matter of law, he had no duty to confine or restrain the dog.

▮▮▮ Morehead, however, asks us to ignore this well-established rule of law and find that, by virtue of entering into a lease, a landlord establishes a relationship to his or her tenant's dog. She argues that such a relationship imposes upon a landlord the duty to "prohibit the dog from occupying the premises," or in the alternative, to ensure the dog's confinement. Morehead's Reply Br. at 6.

Whether the defendant must conform his conduct to a certain standard for the plaintiff's benefit is a question of law for the court to decide. Courts will generally find a duty where reasonable persons would recognize and agree that it exists. This analysis involves a balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Heck*, 786 N.E.2d at 268. In addition to there being no relationship between the parties, foreseeability and public policy militate strongly against imposing a duty of care upon a landlord with respect to animals owned or kept by his or her tenants by virtue of entering into a lease with the knowledge that the tenant owns a dog with vicious tendencies.

▮▮▮ As to foreseeability, Morehead contends if a landlord leases property to a tenant, knowing that the dog is "hostile to strangers and had been trained to dislike" certain people, "it should be obvious to the landlord what will happen should the dog escape." Morehead's Reply Br. at 6. We disagree.

Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human con-

---

**2.** We also note that unlike the premises in *Walker* and *Yates*, the Property was not leased for public or semi-public purposes.

duct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Webb v. Jarvis,* 575 N.E.2d 992, 997 (Ind. 1991) (internal citations omitted), *reh'g denied.* "In other words, 'the foreseeability component of duty requires ... a general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'" *Clark v. Aris, Inc.,* 890 N.E.2d 760, 764 (Ind.Ct.App. 2008) (quoting *Williams v. Cingular Wireless,* 809 N.E.2d 473, 477 (Ind.Ct.App. 2004), *trans. denied* ), *trans. denied.*

We agree that it is reasonably foreseeable that a vicious dog, upon escaping its house or yard and encountering a stranger on a sidewalk, may bite that stranger. We, however, cannot say that it is reasonably foreseeable that that dog indeed will escape its confinement. It is not the dog's mere presence on leased property that causes harm. Rather, it is the owner's failure to adequately confine that dog. Thus, we do not conclude that there is a high degree of foreseeability that leasing property to the owners of vicious dogs will result in injury to third parties.

As to public policy, Morehead argues that it would be served "by discouraging the harboring of known vicious animals in residential neighborhoods." Morehead's Reply Br. at 7. "'Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of public policy which lead the law to say that the plaintiff is entitled to protection.'" *Williams,* 809 N.E.2d at 478 (quoting *Webb,* 575 N.E.2d at 997). "Various factors play into this policy consideration, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer." *Id.*

We agree that society has an interest in preventing dog attacks against innocent parties, and therefore in keeping vicious dogs adequately confined. It would be unreasonable, however, to impose a duty on landlords to regulate tenants' animals, where the owners clearly are in the best position to do so.

We find no reasonable basis to impose a duty upon Deitrich, and as a matter of law, where no duty exists. We therefore find no error in granting Deitrich's motion for summary judgment.

Affirmed.

BRADFORD, J., and BROWN, J., concur.