

**FILED**
May 18 2015, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Hilary A. Barnes
Christopher & Taylor
Indianapolis, Indiana

Scott A. Benkie
Benkie & Crawford
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Peter G. Wenzl
Nationwide Mutual Insurance Company
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary P. Byers,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Robert E. Moredock and<br>Rhoda S. Moredock,<br><br>*Appellees-Defendants.* | May 18, 2015<br><br>Court of Appeals Case No.<br>34A04-1412-CT-560<br><br>Appeal from the Howard Superior<br>Court<br><br>The Honorable George A. Hopkins,<br>Judge<br><br>Cause No. 34D04-1206-CT-595 |

**Brown, Judge.**

[1] Gary P. Byers appeals the trial court's order granting summary judgment in favor of Robert E. Moredock and Rhoda S. Moredock. Byers raises two issues, which we consolidate and restate as whether the court erred in entering summary judgment in favor of the Moredocks and against him. We affirm.

## Facts and Procedural History

[2] On or about January 30, 2012, Byers was riding his motorcycle on County Road West 250 South (the "Roadway") in Howard County, Indiana, when a dog ran into the Roadway and caused him to have an accident and sustain injuries. The dog belonged to Jessica Stine, who lived in a house on a property (the "Property") owned by the Moredocks and leased to Tom Stine, and which was located along the Roadway.

[3] On June 7, 2012, Byers filed a complaint against the Moredocks and Jessica Stine. Byers alleged that Jessica was the owner of a dog later determined to be a Rottweiler and that Jessica resided at the Property owned by the Moredocks. He alleged that he was operating his motorcycle in a lawful and safe manner on the Roadway, that a dog left the yard of the Property, which was not fenced in, and entered the Roadway striking his motorcycle, that the motorcycle flipped several times, and that he was ejected. Byers also alleged that the Moredocks rent the residence on the Property to Jessica and utilize the pole barn on the Property to work on furniture and other items, that Robert Moredock works on the property on a fairly regular basis and was familiar with the Rottweiler named Brutus, and that Robert stated he was aware that the dog did run loose on the property and also that the dog did leave the yard on occasion. The

complaint further stated that the Moredocks failed to comply with the requirements of an ordinance enacted on or about February 18, 2008 (the "Ordinance"), "having knowledge that the dog was not restrained by a leash and not under complete control as required under the Ordinance," and that the Moredocks had a duty under the Ordinance "to restrain and harbor the dog pursuant to the Ordinance and breached that duty by permitting the dog to run at-large on the [Property]." Appellant's Appendix at 10. Finally, Byers alleged that the Moredocks failed to discharge their duty under the Ordinance and as a result of their negligent acts and omissions, he incurred property damage and injuries.

On September 30, 2014, the Moredocks filed a motion for summary judgment together with designated evidence and a brief in support of the motion. In their motion, the Moredocks alleged that the dog was owned by Jessica, whose father Tom was leasing the premises from them, they leased the premises to Tom without a written agreement, they used a pole barn on the premises but otherwise did not retain control of the premises, they had no knowledge of the dog's dangerous propensities, and thus that they owed no duty to Byers. The designated evidence included the depositions of Robert and Rhoda Moredock.

In his deposition Robert testified that the Property consisted of four acres which he had inherited, he constructed the pole barn in 1987 and used it to refinish furniture, he rented the Property five to seven times since 1996 and that, prior to this lawsuit, he never used a written lease. He testified that his agreement with Tom was that Tom would pay the rent, that two dogs lived at the house

and that he never saw the dog that struck Byers's motorcycle leave the Property or chase down other animals. When asked about his weekly visit to the Property, Robert stated he would pick up sticks, check or clean the pole barn, and work on furniture. He indicated he did not enter the house on the Property and that he would greet Tom or his family if they were outside, and that the dogs were usually in the house and, if not, they were on a chain. When asked the location of the chain, he testified one was on the front porch and that he had placed a metal post in the backyard. He stated he considered the dog that struck Byers's motorcycle to be friendly and that the Stines had had the dog for a couple of years.

[6] In her deposition, Rhoda indicated that approximately two times a month she would accompany Robert to the Property and assist him with stripping and sanding furniture in the pole barn. She also testified that she saw the dog loose in the yard only when someone came out with the dog, that the dog was friendly with her, and that she never saw the dog chase another animal or a car.

[7] On October 31, 2014, Byers filed a brief in response to the Moredocks' summary judgment motion and a cross-motion for summary judgment together with designated evidence and a brief. He argued that the Moredocks had a duty under the Ordinance to restrain the dangerous dog and breached that duty by permitting it to run at large on the Property they control.

[8] Byers's designated evidence included interrogatory answers of the Moredocks, the affidavit of Dan Jeffries, and the Ordinance. In their answers to

interrogatories, the Moredocks indicated that the premises were not fenced, and when asked on how many occasions and with whom they had seen the dog out in the yard before, the Moredocks answered "[s]everal," and "Jessica Stine." *Id.* at 128. When asked whether the dog had "a tendency to run into the street," they answered "[n]ot to our knowledge," and when asked "[d]id you ever observe the dog 'chasing' cars and/or motorcycles," they answered "[n]o." *Id.*

[9] In his affidavit, Jeffries stated that he was hired by counsel for Byers to investigate the accident and conduct interviews of witnesses, and that he interviewed Robert Moredock in his driveway at his home. Jeffries' affidavit stated that, during the interview, Robert said that the Rottweiler is "a country dog that runs lose [sic] a lot, but that usually stays in the yard. The only time he leaves the yard is to chase a squirrel or another animal." *Id.* at 129. The affidavit also stated: "On another date, after my interview with Mr. Moredock, and while I was investigating the scene of this accident, I witnessed a Rottweiler, matching the description of the dog at issue in this case, running lose [sic] with no visible form of leash or restraint." *Id.*

[10] Section 3 of the Ordinance included in the designated evidence provides in part:

> B. It shall be unlawful for any owner to allow, suffer, or permit an animal to be at large within the unincorporated area of Howard County.
>
> \* \* \* \* \*
>
> E. It shall be unlawful for any person to own, keep, or harbor a dangerous dog or wild animal within the Howard County; provided

this section shall not apply to animals under the control of a law enforcement or military agency. For the purpose of this Ordinance, an animal may be declared dangerous by the Department of Animal Services.

*Id.* at 134-135. Section 1 of the Ordinance includes definitions of terms and provides in part:

C. "At large" means elsewhere than on the owner's premises, and:

1. Not restrained by a leash, OR

2. Not under the immediate and complete control of a person capable of controlling such animal.

\* \* \* \* \*

F. "Dangerous Dog" means any dog that according to the records of the Department of Animal Services:

(1) Has aggressively bitten, attacked, or endangered or has inflicted severe injury or death on a human being on public or private property; or

(2) Has been used primarily or in part for the purpose of dog fighting or is a dog trained for dog fighting.

(3) Has been listed as a potentially dangerous dog by the Department of Animal Services, and exhibits behavior warranting listing as a Dangerous Dog.

\* \* \* \* \*

I. "Harbor" means the actions of any person who permits any animal to habitually remain or lodge or to be fed within his home, store, enclosure, yard, or place of business, or any premises on which such person resides or controls. An animal shall be presumed harbored if it is fed or sheltered for three (3) days.

\* \* \* \* \*

M. "Owner" means any person or persons owning or having the care, custody, or control of any animal.

\* \* \* \* \*

Q. "Restraint" means the securing of an animal by leash or confining it within the real property limits by its owner.

*Id.* at 130-132.

On November 12, 2014, the trial court entered an order granting summary judgment in favor of the Moredocks and against Byers.

### *Discussion*

The issue is whether the trial court erred in entering summary judgment, which is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Resources,* 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold,* 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.,* 779 N.E.2d 1, 3 (Ind. 2002). We review a summary judgment order *de novo. Bules v. Marshall Cnty.*, 920 N.E.2d 247, 250 (Ind. 2010). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Sterling Commercial Credit-Mich., LLC v. Hammert's Iron Works, Inc.,* 998 N.E.2d 752, 756 (Ind. Ct. App. 2013). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

Byers contends that the Moredocks had a duty under the Ordinance to restrain the dog that struck his motorcycle and breached that duty by permitting the dangerous dog to run at large on the Property they control. He points to the definition of "harbor" in the Ordinance and argues that the Ordinance contemplates that a person who controls the property has a duty to ensure the public is not harmed by allowing a dog to run at large and that, by distinguishing "keeping" and "harboring" from ownership, the Ordinance has a broader reach than statutes or ordinances that impose liability solely on the dog owners. Byers notes that Robert went to the Property weekly to pick up sticks in the yard and clean and use the pole barn to work on furniture, there was no lease, the Moredocks visited the Property whenever they wished, and that Robert installed a post in the back to hold a chain to secure the dogs. He contends that a jury could infer from these facts that Robert retained control not only over the pole barn but also the yard and all outside areas of the Property. In addition, Byers asserts that the fact that Robert installed a post to restrain the dog shows that he knew of its dangerous propensity to run at large, and points to Jeffries' affidavit regarding Robert's statement that the dog ran loose a lot, usually stayed in the yard, and only left the yard to chase a squirrel or another animal, and says that these facts lead to a reasonable inference that the Moredocks knew of the dog's propensity to run at large into the Roadway. Additionally, Byers maintains that, by installing a post and chain in the yard, Robert assumed a duty to restrain the dog, that the mere installation of the post and chain was an insufficient means of restraining the dog, and that Robert breached the duty he assumed when he installed the stake.

The Moredocks' position is that summary judgment was appropriately granted in their favor, they were not the owners or keepers of the dog and therefore did now owe Byers a duty to properly confine it, the fact Robert installed a metal post in the yard shows merely that he provided his tenants with a means by which the dog could be restrained, and that there is no evidence whatsoever that the Moredocks ever restrained the dog or had responsibility for its care. They contend that the Ordinance refers to persons who own, keep or harbor "a dangerous dog" and that there is no evidence the Moredocks were the owners or keepers of the dog, that they ever harbored the dog, or that the dog was a dangerous dog. Appellees' Brief at 8. They further contend that they did not retain control over the premises or have actual knowledge that the dog had a dangerous propensity, and they retained only the right to use the pole barn and there is no evidence the dog was ever kept or seen there.

In his reply brief, Byers asserts that the Moredocks controlled the entire Property except the inside of the house, and that if Robert retained no control over the yard, he would not have had authority to place a metal post in, and that according to the investigator the Moredocks knew the Rottweiler left the yard chasing other animals.

In *Blake v. Dunn Farms, Inc.*, the Indiana Supreme Court held:

> [I]t is the duty of the owner and the keeper of the animal to keep him confined, and the mere possession or ownership of land from which an animal strays is not sufficient to make the landowner liable, so long as the landowner is not the keeper of such animal. This is and has always been the law in Indiana. If the landowner is neither the owner nor

keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not from the condition of the land. To the extent that the condition of the land made it inadequate or unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal.

274 Ind. 560, 565, 413 N.E.2d 560, 563 (1980) (citations omitted).

[17] In *Baker v. Weather ex rel. Weather*, this Court stated that, in order to prevail on a claim against the property owners who did not own the dog, the plaintiffs were required to demonstrate both that the landowners "retained control over the property" and "had actual knowledge that the [dog] had dangerous propensities." 714 N.E.2d 740, 741 (Ind. Ct. App. 1999) (citations omitted). The absence of either component will result in a finding for the landowner. *Morehead v. Deitrich*, 932 N.E.2d 1272, 1276 (Ind. Ct. App. 2010), *trans. denied*. A dangerous or vicious propensity is "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation." *Baker*, 714 N.E.2d at 742 (citations omitted). It is not reasonable to attribute dangerous propensities to a dog merely because it barks at strangers, a person is afraid of the dog, or a city ordinance requires dogs to be restrained at all times, and it is not reasonable to infer actual knowledge of dangerous propensities merely because a dog may have strayed. *See id.*

[18] In *Morehead v. Deitrich*, we addressed the argument that the relationship established by entering into a lease imposes upon a landlord the duty to ensure the confinement of the tenant's dog. 932 N.E.2d at 1279. We held that

"foreseeability and public policy militate strongly against imposing a duty of care upon a landlord with respect to animals owned or kept by his or her tenants by virtue of entering into a lease with the knowledge that the tenant owns a dog with vicious tendencies." 932 N.E.2d at 1279. As to foreseeability, we noted that "[i]mposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Id.* (citation omitted). We then stated:

> We agree that it is reasonably foreseeable that a vicious dog, upon escaping its house or yard and encountering a stranger on a sidewalk, may bite that stranger. We, however, cannot say that it is reasonably foreseeable that that dog indeed will escape its confinement. It is not the dog's mere presence on leased property that causes harm. Rather, it is the owner's failure to adequately confine that dog. Thus, we do not conclude that there is a high degree of foreseeability that leasing property to the owners of vicious dogs will result in injury to third parties.
>
> * * * * *
>
> We agree that society has an interest in preventing dog attacks against innocent parties, and therefore in keeping vicious dogs adequately confined. It would be unreasonable, however, to impose a duty on landlords to regulate tenants' animals, where the owners clearly are in the best position to do so.

*Id.* at 1280.

[19]     With respect to Byers' argument related to the Ordinance, we observe that Byers did not allege in his complaint and does not argue on appeal that the dog which struck his motorcycle was a "dangerous dog" under the Ordinance; rather, his sole allegation and argument is that the dog was "at-large" as prohibited by the Ordinance when it struck his motorcycle. *See* Appellant's

Appendix at 10. While Byers mentions Paragraph E of Section 3 of the Ordinance, which is applicable to persons who own, keep, or harbor a "dangerous dog," he has not alleged or argued that the dog was a dangerous dog under the Ordinance. Byers also cites to Paragraph B of Section 3 of the Ordinance, which makes it unlawful for an "owner" to permit an animal to be at large, and an owner is a person or persons owning or having the care, custody, or control of the animal. *See* Appellant's Appendix at 134. However, the Moredocks designated evidence establishing that they were not persons owning or having the care, custody, or control of the dog, nor were they keepers of the dog. As a result, Paragraph B of Section 3 of the Ordinance did not impose any duty on the Moredocks to confine or otherwise restrain a dog owned or in the care of their tenant or the residents of the Property. *See Blake*, 274 Ind. at 565, 413 N.E.2d at 563 ("If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal."); *see also Morehead*, 932 N.E.2d at 1279 ("The undisputed facts are that [the landowner] was neither the owner nor the keeper of his tenants' dog. Thus, as a matter of law, he had no duty to confine or restrain the dog.").

[20] Moreover, the fact that the Moredocks owned the Property or had entered into a lease with Tom did not impose a duty on the Moredocks to ensure that any dog on the Property was adequately confined or restrained or otherwise under the control of the dog's owner or keepers. While it may have been foreseeable that upon escaping the Property, the dog may run into the Roadway and cause an accident, it was not reasonably foreseeable that the dog would in fact escape

its confinement or the control of its owner or keepers. *See Morehead*, 932 N.E.2d at 1280 (holding that it is not reasonably foreseeable that a dog indeed will escape its confinement). As we held in *Morehead*, "[i]t is not the dog's mere presence on leased property that causes harm," but rather "it is the owner's failure to adequately confine that dog." *Id.* There is generally not a high degree of foreseeability that leasing property to an owner or keeper of a dog, even where the dog may generally need to be restrained, will result in injury to third parties. *See id.* (concluding that there is not "a high degree of foreseeability that leasing property to the owners of vicious dogs will result in injury to third parties").

[21]     Additionally, the fact that Robert placed a metal post in the yard of the Property so that his tenants had an additional option or method of confining their dog does not render it reasonably foreseeable that the dog's owner or keepers would not in fact adequately restrain the dog or that it would escape its confinement or the control of its owner or keepers and run into the Roadway and cause injury. *See Blake*, 274 Ind. at 565, 413 N.E.2d at 563 (holding that the responsibility for selecting an adequate method of confinement is upon the keeper of an animal and not upon the landowner). As the owners of the Property and landlords, the Moredocks were not expected to monitor the tenants or residents of the Property so as to ensure that, as dog owners or keepers, the tenants or residents did not fail to adequately confine or control their dogs. *See Morehead*, 932 N.E.2d at 1280 (holding that it would be

unreasonable to impose a duty on landlords to regulate the tenants' animals where the owners clearly are in the best position to do so).

## *Conclusion*

[22] In sum, the provisions of the Ordinance cited by Byers were inapplicable to the Moredocks and did not impose any duty on them to confine or restrain a dog in the care of the tenant or residents of the Property; the Moredocks were not the owners or keepers of the dog that struck Byers's motorcycle and had no duty to confine or control the dog on that basis; and the Moredocks as the owners of the Property and landlords did not have a duty to ensure proper or adequate confinement or control of the dog, or to monitor the tenant or residents of the Property to ensure they properly or adequately confined or controlled the dog. Accordingly, summary judgment in favor of the Moredocks and against Byers was proper.

[23] For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of the Moredocks and against Byers.

[24] Affirmed.

Crone, J., and Pyle, J., concur.