# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2017, 6:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael E. Simmons
William D. Beyers
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
GARDNER

Robert S. Rifkin
Rifkin, Blanck & Rubenstein, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEES
LOGHMANI & AKHAVAN

Robert A. Durham
State Farm Litigation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey Herbert,

*Appellant-Plaintiff,*

v.

Jacob Gardner, Ziaollah
Loghmani, and Kamran
Akhavan,

*Appellees-Defendants.*

July 31, 2017

Court of Appeals Case No.
49A02-1702-CT-391

Appeal from the
Marion Superior Court

The Honorable
James B. Osborn, Judge

Trial Court Cause No.
49D14-1601-CT-3207

**Kirsch, Judge.**

[1] Jeffrey Herbert ("Herbert") appeals the trial court's orders granting summary judgment in favor of Jacob Gardner ("Gardner") and Ziaollah Loghmani ("Loghmani") and Kamran Akhavan ("Akhavan") (together, "Landlords"). Herbert raises the following restated issues for our review:

> I. Whether the trial court erred in granting summary judgment in favor of Gardner despite certain Marion County ordinances that Herbert contends are designed to protect the public from dog attacks and dogs at large; and

> II. Whether the trial court erred in granting summary judgment in favor of Landlords because Herbert claims that Landlords failed to properly maintain the fence.

[2] We affirm.

## Facts and Procedural History

[3] In October 2015, Landlords owned a rental property at 945 East Morris Street in Marion County, Indiana. At that time, Landlords had been renting the property to Gardner for approximately seven or eight years. The property had a front yard and a backyard, which was surrounded by a chain link fence that was approximately three and a half to four feet high with latched access gates to both the front and back yards.

[4] Gardner owned a dog named Chewbacca ("Chewy"), and Landlords were aware that Gardner owned Chewy. Chewy was a neutered, fully vaccinated, male, tan-colored, mixed breed dog with white spots on his chest and feet typical of the boxer breed. In October 2015, Chewy was about two years old

and weighed between thirty-five and forty pounds. Chewy occasionally barked from inside the fence at people who walked or biked past the property, but never exhibited "vicious or aggressive behavior toward people" and had never bitten or attacked anyone. *Appellant's App.* at 66. No one had ever complained to Gardner that Chewy had bitten or attacked them or shown any aggressive behavior toward them. *Id.* Gardner had never seen Chewy act aggressively toward people and had no reason to believe that Chewy had any vicious tendencies. *Id.*

[5]   Loghmani had met Chewy on prior occasions and found Chewy to be friendly and never exhibited "dangerous propensities." *Id.* at 32. Landlords had never received any complaints related to Chewy. While Gardner was renting the property, Loghmani would drive by the rental property every two to three months to make sure the lawn was mowed, but did not enter the property without notice to Gardner. Akhavan lives in China and has lived there for approximately ten years.

[6]   On October 18, 2015, Herbert was riding his bike in the alley adjacent to the property. Chewy was in the yard and ran along the fence line barking at Herbert as he was riding in the alley toward the street. When Herbert reached the street, the dog had left the yard and "attacked" Herbert while he was on his bike in the street. *Id.* at 48. As a result, Herbert fell off his bike and broke his leg.

[7]    On the date of the incident, the fence and gates at the property were in good condition. The fencepost at the northwest corner of the fenced yard was bent; however, the bottom of the chain link fence extending both east and west of the bent post was no more than a half an inch off the ground. *Id.* at 68. Gardner had reported the damaged post to Landlords shortly after it happened. To Gardner's knowledge, Chewy had never escaped the fenced yard, and because he lived on a busy street, Gardner kept Chewy on a leash when he walked him outside the fenced yard. On the morning of October 18, Gardner left for work at approximately 9:00 a.m., and at that time, Chewy was in the residence, the gates to the fenced yard were closed and latched, and Gardner's roommate was inside the residence. When Gardner arrived home from work that afternoon between 3:30 p.m. and 4:00 p.m., Chewy was inside the residence.

[8]    Herbert filed a complaint for damages against Gardner, Loghmani, and Akhavan, alleging that Chewy had escaped from the property Gardner rented from Landlords and that Chewy had caused Herbert to have an accident on his bicycle which resulted in injury to Herbert. Landlords and Gardner each filed a motion for summary judgment. Herbert filed a motion for partial summary judgment against Gardner. A hearing was held on the motions, and on February 2, 2017, the trial court granted both Landlords' and Gardner's motions for summary judgment. Herbert now appeals.

## Discussion and Decision

[9]    Herbert argues that the trial court erred in granting summary judgment in favor of Gardner and in favor of Landlords. When reviewing the grant of summary

judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

[10] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *FLM,* 973 N.E.2d at 1173. We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we

carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

# I. Gardner

Herbert first contends that the trial court erred in granting summary judgment in favor of Gardner because Gardner did not keep Chewy from escaping or attacking Herbert as required by certain Marion County ordinances. Herbert asserts that, although Gardner attempted to avoid responsibility under common law analysis, such analysis is not necessary because there are two specific Marion County ordinances that apply and state that, if a dog escapes, the owner is responsible for injuries caused by the dog. Herbert alleges that these ordinances impose a duty on Gardner to make sure that Chewy does not injure anyone and to make sure that Chewy does not escape the property. He maintains that the ordinances, therefore, support his claim that he can recover damages from Gardner even if Chewy did not show prior dangerous propensities.

Under Marion County Local Ordinance section 531-102(a), "an owner or keeper of an animal commits a violation of the Code if that animal is at large in the city." Under Marion County Local Ordinance 531-109(a), "an owner or keeper of an animal commits a violation of the Code if that animal attacks or injures a person who did not provoke the animal prior to the attack." However, these Marion County ordinances cited by Herbert do not specifically provide for a private right of action to allow a lawsuit filed by a private individual to enforce the ordinances. Instead, when a violation of the ordinances is found by

the city, a fine of up to $500 may be imposed or, under certain circumstances, a court may order the animal to be forfeited or destroyed. Herbert has not cited to any cases that hold that a violation of a city ordinance establishes negligence per se and allows civil damages. Further, there is no evidence that Gardner was even cited by the City of Indianapolis or Marion County for a violation of any ordinance.

[13] In Indiana, the common law presumes that all dogs, regardless of breed or size, are harmless. *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 275 (Ind. 2003) (citing *Poznanski v. Horvath*, 788 N.E.2d 1255, 1257 (Ind. 2003); *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind. 1993)). This presumption can be overcome by evidence of a known vicious or dangerous propensity of the particular dog. *Ross*, 619 N.E.2d at 914. A dangerous propensity is a tendency of the animal to do any act which might endanger the safety of persons or property in a given situation. *Id*. When the owner or keeper has such knowledge, he is obligated to use reasonable care to prevent the animal from causing injury or damage. *Id*. Furthermore, the owner of a dog is expected to use reasonable care to prevent injury that might result from the natural propensities of dogs. *Cook*, 796 N.E.2d at 275. Therefore, whether the owner or keeper of the animal is aware of any vicious propensity, the legal description of the duty owed is the same, that of reasonable care under the circumstances. *Id.*

[14] Here, no evidence was presented that Chewy had known vicious or dangerous propensities or that he had ever shown aggressive or hostile behaviors toward people. The designated evidence shows that Gardner had no knowledge that

Chewy possessed any dangerous propensities and had not received any complaints about Chewy's behavior. Gardner kept Chewy inside of a fenced yard and did not knowingly allow Chewy to leave the yard unattended. We conclude that, based on the designated evidence, Gardner was not aware of any dangerous propensities of Chewy. Summary judgement was properly granted in favor of Gardner.

## II. Landlords

Herbert next argues that the trial court erred when it granted summary judgment in favor of Landlords because Landlords failed to properly maintain the fence, which allowed Chewy to escape and attack Herbert. Herbert contends that Landlords had a duty to maintain the fence and that the fence post near the alley was "crushed" and could have allowed Chewy to escape from the yard. *Appellant's Br*. at 9. He also claims that, because there was damage to the fence and Landlords knew that Chewy was on the property, Chewy was a condition on the property that could foreseeably escape and injure a passerby. Herbert, therefore, asserts that a factual dispute exists as to whether Landlords' failure to properly maintain the fence allowed Chewy to escape, and summary judgement was not proper.

Although Herbert asserts that Chewy was a dangerous condition on Landlords' property that could foreseeably escape and create a duty under premises liability, such an argument has previously been rejected by this court in *Morehead v. Deitrich*, 932 N.E.2d 1272 (Ind. Ct. App. 2010), *trans. denied*. In *Morehead*, the plaintiff argued that the tenant's dog was a dangerous condition

under premises liability. *Id.* at 1277. This court stated that a "dangerous condition" is defined as a "property defect creating a substantial risk of injury when the property is used in a reasonably foreseeable manner." *Id.* at 1278. This court, therefore, held that the tenant's dog was not a property defect. *Id.* at 1279. Additionally, in *McCraney v. Gibson*, 952 N.E.2d 284 (Ind. Ct. App. 2011), *trans. denied*, this court again rejected the plaintiff's argument that the landlord should be held liable for the acts of a tenant's dog under the theory of premises liability. *Id*. at 289. We, therefore, reject Herbert's contention that Chewy was a property defect and that the theory of premises liability should be applied.

[17] "[I]n order to prevail against a landowner for the acts of a tenant's dog, the plaintiff must 'demonstrate both that the landowner [ ] retained control over the property and had actual knowledge that the [dog] had dangerous propensities.'" *Id*. at 287 (quoting *Morehead,* 932 N.E.2d at 1276). The absence of either component will result in a finding for the landowner. *Id.* Here, there is no evidence in the record that Landlords knew that Chewy possessed any violent propensities. Because Landlords need only prove the absence of one of the prongs of the test, we find that they were entitled to summary judgment as a matter of a law. The trial court did not err in entering summary judgment in favor of Landlords.

[18] Affirmed.

[19] Mathias, J., and Altice, J., concur.