**James H.S. OLDS, III, Appellant–Plaintiff,**

v.

**Steven NOEL and Rita Noel, Appellees–Defendants.**

No. 02A03–0606–CV–237.

Court of Appeals of Indiana.

Dec. 8, 2006.

Thomas A. Manges, Roby Hood & Manges, Fort Wayne, IN, Attorney for Appellant.

Dane L. Tubergen, Fort Wayne, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

James H.S. Olds, III ("Olds") appeals from the trial court's grant of summary judgment to Steven and Rita Noel ("the Noels") on his negligence claim. Olds is a mail carrier for the United States Postal Service. On February 20, 2003, Olds was injured when he allegedly slipped on snow and ice that had accumulated on the sidewalk and stoop of a residential, single-family dwelling owned by the Noels, which was being rented at the time by two other persons not a party to this action. Olds claims that the Noels owed him a duty of care, as an invitee, to maintain the premises in a safe fashion, specifically by removing accumulated snow and ice from the sidewalk and stoop. We find that the Noels did not owe a duty of care to Olds under these facts, and we reject Olds' invitation that we extend the recognized duty of care owed by a landlord to invitees at multi-unit rental dwellings to cases involving single-unit rental dwellings. We therefore affirm the trial court.

### Facts and Procedural History

Steven and Rita Noel own several rental properties, among them a single-family residence in Fort Wayne, Indiana. The Noels rented this dwelling to two persons, Kathy Brown and Eddie Phillips ("the Lessees"), by a written lease dated May 26, 2000.[1]

On February 20, 2003, at approximately 11:35 a.m., Olds was delivering mail to the leased premises. The Lessees still occupied the premises on that date. As Olds walked along the private sidewalk of the house, he allegedly slipped on an accumulation of snow and ice, causing him to fall

---

1. In a footnote to his Appellant's Brief, Olds provides: "James Olds was never able to find [the Lessees] after the accident. Their whereabouts remain unknown, and they were never joined as defendants." Appellant's Br. p. 4.

and strike his left knee against the edge of the concrete stoop leading to the home's entrance. Olds' injury eventually required surgical repair of his left anterior cruciate ligament and medial meniscus, and he continues to require periodic treatment for the permanent effects of the injury.

On February 7, 2005, Olds filed a Complaint and Request for Jury Trial against the Noels as property owners. The Complaint alleged that Olds' fall was the fault of the Noels and that the Noels "failed to fulfill their duty of reasonable care as a landlord by salting the sidewalk in question...." Appellant's App. p. 20. The Noels ultimately filed a Motion for Summary Judgment with the trial court, and a hearing was held on that motion on December 8, 2005. The Noels argued before the trial court that they had transferred control and possession of the rental property to the Lessees and therefore were not liable for injuries occurring on that property as long as the Lessees continued to rent the premises. Olds argued, however, that there was at least a genuine issue of material fact as to whether the Noels retained control over the sidewalk of the premises. He insisted that the sidewalk was a common area under the lease, and therefore that the Noels had a duty to maintain the condition of the sidewalk.

Following the filing of supplemental briefs and various motions related thereto, the trial court granted the Noels' motion for summary judgment on February 15, 2006. Olds subsequently filed a motion to correct errors, which was denied, and this appeal follows.

### Discussion and Decision

Olds contends that the trial court erred in granting summary judgment to the Noels. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bushong v. Williamson*, 790 N.E.2d 467, 474 (Ind.2003). On appeal, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams v. Riverside Community Corrections Corp.*, 846 N.E.2d 738, 743 (Ind.Ct.App.2006), *trans. denied.* We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. *Id.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Id.* A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.*

To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim. *Doe v. Lafayette School Corp.*, 846 N.E.2d 691, 698 (Ind.Ct.App.2006), *reh'g denied.* A duty of the defendant, owing to the plaintiff, to exercise reasonable care in his conduct is a required element in the tort of negligence. *Beckom v. Quigley*, 824 N.E.2d 420, 424 (Ind.Ct.App.2005). Issues of duty are generally questions of law for the court to decide. *Id.* "Summary judgment in a negligence case is particularly appropriate when the court determines that no duty exists because, absent a duty, there can be no breach and, therefore, no negligence." *Reed v. Beachy Const. Corp.*, 781 N.E.2d 1145, 1148–49 (Ind.Ct.App. 2002), *trans. denied.*

### I. Control and Possession of Premises: The General Rule

The parties agree that Indiana law regarding the maintenance and condition

of real property generally holds that "whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind.2004). Applying this rule in the landlord-tenant setting, we have held: "As a general rule, in the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property." *Pitcock v. Worldwide Recycling, Inc.*, 582 N.E.2d 412, 414 (Ind.Ct.App.1991).

## A. Common Areas

■ Olds argues that the general rule should not apply in this case. In support of that argument, he first cites a well-recognized exception to the rule, which is stated in the seminal case of *Rossow v. Jones*, 404 N.E.2d 12 (Ind.Ct.App.1980). *Rossow* provides that "a landlord does have a duty of reasonable care that the common ways and areas, or areas over which he has reserved control, are reasonably fit and that hazards created through a natural accumulation of ice and snow are not beyond the purview of that duty." *Id.* at 14. Olds argues that because the Noels rented this single-unit residence to two persons whose relationship to one another is not known, the sidewalk, along with the front stoop, mailbox, and entryway to which the sidewalk leads, were "common" areas for the purposes of the lease. He contends that the fact that two separate tenants of the residence each held a right to utilize these areas, the areas are *per se* "common." We find this argument insufficient to withstand summary judgment.

■ In proffering a definition of "common area" that construes the phrase to mean, basically, any area used by more than one party to a lease, Olds ignores the definition of the phrase. Black's Law Dictionary defines "common area" in the landlord-tenant context as "The realty that all tenants may use though the landlord retains control and responsibility over it." Black's Law Dictionary 291 (8th ed.2004). Following this definition, then, a portion of any leased premises may only be considered a "common area" where the landlord retains control and responsibility over that portion.

As the Noels point out, Indiana courts to date have recognized common areas on rental properties only in apartment complexes, duplexes, or other multi-unit properties where tenants lease property subject to leases specific to each individual rental unit. *See Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158 (Ind.Ct.App.2005) (discussing common areas in apartment complexes), *reh'g denied, trans. denied; Dawson by Dawson v. Long*, 546 N.E.2d 1265 (Ind.Ct.App.1989) (discussing common areas of a duplex), *reh'g denied, trans. denied; Flott v. Cates*, 528 N.E.2d 847 (Ind.Ct.App.1998) (discussing common areas of a residential home divided into three smaller apartments), *reh'g denied.* We agree with the Noels' assertion regarding the logical reasoning behind common areas in such rental situations: because there are multiple tenants occupying multiple units under separate leases, the landlord maintains control over the common areas because it would be impractical to assign divided control of and responsibility for those areas to the tenants. *See* Appellant's Br. p. 8.

In the instant case, it is undisputed that the Noels rented an undivided, single-family dwelling. Moreover, both Lessees—Brown and Phillips—signed one common lease on the same date. Without evidence to the contrary, this suggests that the Lessees shared the whole of the premises

rather than each utilizing only one-half of it under distinct tenancies.[2] Furthermore, the language of the lease itself indicates that the Lessees were responsible for the sidewalk and other areas that may be considered analogous to a sidewalk for the purpose of control.[3] Article 21 of the lease provides, "The streets, sidewalks, entrances, hallways [sic] *shall not be obstructed in any way* or used by you for any purpose other than ingress or egress." Appellant's App. p. 31 (emphasis added). Another section of that article also provides, "You shall keep the premises in a clean and tenantable condition and shall obey all ordinances of the City and County or other agency of government, as well as the orders, rules and regulations of the health officers or other officers." *Id.* at 32. Finally, Steven Noel testified in his deposition that in the fifteen years he has owned the property at issue, all lawn maintenance—including yardwork during the warm months and snow removal during cold months—has been the responsibility of the tenants and has never been attended to by the Noels. *Id.* at 103–04. In short, the evidence does not support Olds' contention that the sidewalk of this single-family dwelling is properly regarded as a common area for purposes of landlord-tenant law.

**B.  Right of Entry**

■  Olds attempts to save his claim, however, by pointing to provisions of the lease reserving a right of entry to the Noels as landlords.  Article 6 of the lease provides:

> RIGHT OF ENTRY: Lessee shall permit Lessor, its agents or employees, to enter the Apartment at all reasonable and necessary times to inspect the Apartment or for any purpose connected with the repair, improvements, care and management of the Apartment and the Building.  Lessor shall have the right to cut off, at reasonable and necessary times, heat, water or electricity to effect repairs.  Lessor, its agents or employees, shall have the right to show the Apartment to prospective lessees during the thirty (30) day period prior to termination of this lease.

*Id.* at 29.  Another provision in Article 21 of the lease provides for a similar right of entry to make repairs "for the safety, preservation, or improvement of said premises . . . ." *Id.* at 32.  Olds insists that having reserved this right of entry as landlords, the Noels must never have transferred full control and possession of the premises to the Lessees.  Again, we cannot agree.

**2.**  We do not mean to suggest that two lessees each utilizing only one-half of an undivided, single-family dwelling gives rise to any presumption that certain portions of the premises should be considered common areas.  This issue is not before us directly, and we only comment on it here to point out the weakness in Olds' argument that because the relationship of the Lessees is unknown, we should presume that they operated under an arrangement more analogous to that in a multi-unit dwelling.

**3.**  Although not argued by Olds, it is worth noting that the Noels, who own several other rental properties including two apartment complexes, used the same lease for this property that they use for their apartment complexes.  Indeed, the lease has "Pine Crest Apartments—Bovera Garden Apartments" printed in bold at the top of page one.  This lease, then, has many references to apartments and common areas and other tenants, etc., that are inapplicable to the lease of a single-family dwelling.  Indeed, these references likely are the source of much of the confusion in this case.  Landlords are advised that it is appropriate to utilize leases specific to each type of rental property they own, tailored to the specific use of each property as necessary.

First, Olds points to no legal precedent to support his contention that a mere right to entry works to defeat the transfer of control and possession of a leased premises to the lessees of that premises. Indeed, such a provision is common in most every lease of any single—or multi-unit residential premises. To agree with Olds here, then, would be to rule that all of those leases leave a landlord subject to liability for any injury to any third-party invitee anywhere on the premises of a leased property. The exception would swallow the general rule.

Second, we find merit in the Noels' argument citing *Risk v. Schilling*, 569 N.E.2d 646 (Ind.1991), *reh'g denied*. In *Risk*, the Indiana Supreme Court addressed control and possession of a premises owned by a partnership whereupon one partner maintained a workshop in a building on the premises. Asked to determine whether the partnership as a whole, based on its legal ownership and right to the property, was liable to an invitee injured in the workshop, the Court affirmed a directed verdict for the partnership. In doing so, the Court cited the Restatement (Second) of Torts § 328 E (1965) to define a possessor of land:

A possessor of land is

    (a) a person who is in occupation of the land with intent to control it or

    (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

    (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

At the time of Olds' accident, the Noels fell into none of these three categories. Steven Noel's testimony regarding maintenance of the exterior of the premises indicates, further, that they never intended to control any part of the premises under the right of entry, and indeed that they only exercised that right when called upon to do so by the Lessees. *See* Appellant's App. p. 103. We are not persuaded, then, by Olds' argument that a landlord's reservation of a right of entry on rented premises is equivalent to a reservation of substantial control and possession of the premises. The trial court's determination that the Noels owed no duty of care to Olds on the date of Olds' fall was not erroneous.

## II. Public Policy

Olds makes a final argument that we wish to briefly address. As we read his argument, he insists that public policy concerns overwhelmingly support an expansion of the definition of "common areas" to include those portions of single-dwelling premises that would be considered common areas on multi-unit premises; areas like sidewalks, yards, or driveways.

Olds contends that the duty to remove snow and ice from these portions of single-family rental properties should be placed on the landlord because it is the landlord who is in a better position to foresee and monitor the accumulation of snow and ice and, financially, to deal with its removal. The logic underlying Olds' argument is flimsy, at best. He argues that some tenants are either physically or financially incapable of clearing snow and ice, and he suggests, "It is impractical to presume that tenants, who may be unaware, unwilling, unable, or transitory, will remove ice and snow." *Id.* at 16. He further predicts, "Absent action by the landlord, the work will likely not get done." *Id.* at 17. "Instead," he warns, "a vacuum of responsibility will be created wherein lawful visitors upon rental premises must enter at their own risk." *Id.*

Under the existing rule, the question of duty turns not on the characteristics of the tenant but on the characteristics

of the rented premises. A landlord is held liable for rented premises inasmuch as those premises contain common areas or the landlord assumes responsibility for the premises under the lease or by operation of law. Otherwise and to the extent that a landlord has transferred control and possession of the premises to a tenant, the tenant is liable. Olds ignores this fact, which provides a legal remedy under the existing rule if a tenant in control and possession of the premises does not meet his obligation to maintain that premises in a safe manner. Indeed, such a remedy, though not pursued, was available in this case. The injured party has a cause of action *against the tenant.* The "vacuum" of which Olds speaks is illusory. Absent any sound, concrete logic to support Olds' public policy argument, we decline to shift liability ordinarily resting with tenants in control and possession of a premises to landlords who have relinquished such control and possession.

Affirmed.

BAKER, J., and CRONE, J., concur.