# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 29 2020, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kenneth J. Allen
Robert D. Brown
Thomas R. Benton
Kenneth J. Allen Law Group, LLC
Valparaiso, Indiana

ATTORNEY FOR APPELLEES

Minh C. Wai
Kopka Pinkus Dolin, P.C.
Crown Point, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Armondo Habhab and Rachel Habhab, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Levi Roe, Geraldine Gibson, Christine Witt, and Larry Witt, Jr., <br><br> *Appellees-Defendants* | July 29, 2020 <br><br> Court of Appeals Case No. 20A-CT-542 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Bruce D. Parent, Judge <br><br> Trial Court Cause No. 45D11-1805-CT-73 |

**Crone, Judge.**

## Case Summary

Ten-year-old Armondo Habhab (Armondo)[1] was mauled by a dog owned by Levi Roe and Geraldine Gibson (collectively the Tenants) while he was a guest inside their rental home. Armondo and his mother, Rachel Habhab (collectively the Habhabs), filed a negligence action against the Tenants and their landlords, Christine and Larry Witt, Jr. (collectively the Landlords). The Landlords filed a motion for summary judgment, claiming that they owed no duty to the Habhabs as a matter of law. The trial court granted summary judgment in the Landlords' favor, and the Habhabs now appeal.[2] We affirm.

## Facts and Procedural History

In May 2017, the Tenants approached the Landlords concerning a house that they heard the Landlords might be making available for lease (the Property). The Landlords had previously lived at the Property and then allowed their son to live there with friends, so these would be the first nonrelative tenants to live at the Property. The Tenants said that they needed immediate occupancy and did not have the funds for a security deposit. The Landlords informed the Tenants that the Property needed to be cleaned up and painted prior to occupancy, but at the Tenants' urging, the Landlords permitted them to move

---

[1] Armondo's name appears throughout the record with two different spellings. We have chosen to spell it as it appears in the documents filed by his counsel.

[2] The Tenants are not participating in this appeal. There is no indication that they were dismissed as parties, and the status of the Habhabs' claims against them is unclear. However, the summary judgment order before us was certified as final and appealable pursuant to Indiana Trial Rule 54(B) and/or Trial Rule 56(C).

in immediately, with the understanding that the Tenants would perform the needed painting, touch-ups and repairs in lieu of a security deposit. The Landlords also informed the Tenants that because of their desire for early access, the Landlords' son would not have time to remove all his possessions and therefore would be storing some personal belongings in the garage for a short period. The Tenants agreed. Shortly thereafter, the Landlords presented the Tenants with a lease that included a written prohibition against dogs. The Tenants informed the Landlords that they had a small dog, and the Landlords revised the lease to allow the Tenants to have one dog, up to thirty pounds in size, with proof of city registration and vaccination records. The Tenants signed the revised lease on May 6. 2017. When they moved in, the Tenants brought with them their sixty-pound pit bull.

[3] A month later, the Tenants' son invited Armondo to stay overnight for a sleepover. That night, the two boys played video games in the son's bedroom, and Armondo never saw a dog, a dog bowl, or any signs that the Tenants had a dog. The next morning, as Armondo was sleeping in a recliner in the son's bedroom, the Tenants' pit bull began licking him on his head and ear. Having been awakened by the licking, he attempted to wave the dog away, and it mauled him, causing serious injuries that included the loss of his ear.

[4] The Habhabs filed a negligence action against the Tenants and the Landlords, alleging that they violated the duty of reasonable care for Armondo's safety while he was the Tenants' social guest. With respect to the Landlords, the Habhabs claimed that they were negligent in allowing the Tenants to have a

dog that exceeded the weight limit specified in the lease and that was of a breed generally considered dangerous, and that they retained sufficient control over the Property to create a duty of reasonable care for the Tenants' social guests. The Landlords filed a motion for summary judgment, claiming that they owed no duty to the Habhabs as a matter of law. After a hearing, the trial court issued an order granting the Landlords' motion for summary judgment. The Habhabs now appeal. Additional facts will be provided as necessary.

## Discussion and Decision

The Habhabs challenge the trial court's grant of summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the same standard as the trial court. *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 41 (Ind Ct. App. 2019) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)), *trans. denied*. In conducting our review, we consider only those matters that were designated at the summary judgment stage. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019).

Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, the nonmoving party must "come forward with contrary evidence" showing a genuine issue for the

trier of fact. *Buddy & Pals*, 118 N.E.3d at 41 (citing *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009)).

[7] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the nonmoving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Buddy & Pals*, 118 N.E.3d at 41 (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). Here, the trial court included special findings of fact in its summary judgment order. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Ball v. Jones*, 52 N.E.3d 813, 818 (Ind. Ct. App. 2016). Nevertheless, findings offer valuable insight into the trial court's rationale and thus facilitate our review. *Id*. at 819. The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 103 N.E.3d at 1089. We may affirm a grant of summary judgment on any legal basis supported by the designated evidence. *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010).

[8] The Habhabs' action against the Landlords is a negligence action. To prevail on a negligence claim, the plaintiff must demonstrate "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by

defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). The determination of whether a duty exists is a question of law for the courts to decide. *Buddy & Pals*, 118 N.E.3d at 41. "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 402 (Ind. Ct. App. 1992), *trans. denied* (1993).

[9] To the extent that the Habhabs' negligence claims involve the interpretation of lease provisions, we note that leases are contracts, and matters of contract interpretation are questions of law. *Schuman v. Kobets*, 716 N.E.2d 355, 356 (Ind. 1999); *Brill*, 12 N.E.3d at 309. In interpreting a contract, we must ascertain and effectuate the intent of the parties at the time of contracting and read the contract as a whole so as not to render any words, phrases, or terms ineffective or meaningless. *Ind. Dep't of Nat. Res. v. Lick Fork Marina, Inc.*, 820 N.E.2d 152, 157 (Ind. Ct. App. 2005), *trans. denied*, *cert. denied*.

[10] At its core, the underlying action is one for damages due to a dog attack. Under Indiana common law,

> all dogs, *regardless of breed or size*, are presumed to be harmless domestic animals. This presumption is overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. A dangerous propensity is a tendency of the animal to do any act that might endanger the safety of persons or property in a given situation.

*Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind. 2003) (emphasis added) (citations omitted). Owners of domestic animals may be held

liable for harm caused by their pet "only if the *owner* knows or has reason to know that the animal has dangerous propensities." *Id*. at 1259 (emphasis added).

[11] Here, the Landlords are not the owners of the dog that bit Armondo. Rather, they are merely the owners of the Property where the dog and its owners (the Tenants) lived and where the attack occurred. To prevail against a landowner/landlord for the acts of a tenant's dog, the plaintiff must demonstrate: (1) that the "landowner retained control over the property"; and (2) that the "landowner had actual knowledge that the [tenant's dog] had dangerous propensities."[3] *Morehead v. Deitrich*, 932 N.E.2d 1272, 1276 (Ind. Ct. App. 2010) (quoting *Jones v. Kingsbury, 779 N.E.2d 951, 953 (Ind. Ct. App. 2002)), trans. denied* (2011). "The absence of either component will result in a finding for the landowner." *Id*.

[12] The Habhabs argue that the lease gives the Landlords an unusual level of control. The lease provisions relevant to this appeal include:

---

[3] A dangerous propensity has been defined in Indiana as

> a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined…. It is not, therefore, reasonable to attribute vicious propensities to a dog merely because he barks at strangers, because a person is afraid of the dog, or because a city ordinance requires a dog to be restrained at all times. These are not acts by the dog which might endanger persons or property, and knowledge of such facts could not possibly support an inference of actual knowledge of the dog's vicious propensities.

*Royer v. Pryor*, 427 N.E.2d 1112, 1117 (Ind. Ct. App. 1981) (citations and quotation marks omitted).

16. Pets. Tenant is not allowed to keep any animals or pets on or about the Property without the Landlord's prior written consent, except the following:
The number of pets allowed: 1
Type of pets allowed:
- Dog
Weight limit for each pet: No pets larger than 30 lbs.
Documentation Required
- City Registration
-Vaccination records

19. Maintenance and Repairs…. Except in an emergency, all maintenance and repair requests must be made in writing and delivered to Landlord or property manager …. A repair request will be deemed permission for the Landlord or property manager to enter the Property to perform such maintenance or repairs in accordance with this Agreement unless otherwise specifically requested, in writing, by Tenant. Tenant may not place any unreasonable restrictions upon Landlord or property manager's access or entry. Landlord will have expectation that the Property is in a safe and habitable condition upon entry.

….

29. Landlord Access to Property. Landlord and Landlord's agents will have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Property for the purpose of inspecting the Property and all buildings and improvements thereon. Tenant will make the Property available to Landlord or Landlord's agents for the purposes of making repairs or improvements, or to supply agreed services or show the Property to prospective buyers or tenants, or in case of emergency. Except in case of emergency, Landlord will give Tenant reasonable notice of intent to enter. For these purposes, twenty four (24) hour written notice will be deemed reasonable.

Appellants' App. Vol. 2 at 91, 94.[4]

[13]     The Habhabs assert that, per sections 19 and 29 of the lease, the Landlords retained sufficient control over the Property to create a duty to protect Armondo from the Tenants' dog. These provisions specify the reasons, times, and circumstances under which the Landlords had the right to enter the Property. Right-of-entry provisions are based on the traditional covenant of quiet enjoyment, which protects tenants from unlawful entries by the landlord onto the leased premises and respects their possessory interest in the beneficial use and enjoyment of the leased premises. *Sigsbee v. Swathwood*, 419 N.E.2d 789, 797 n.8 (Ind. Ct. App. 1981). Simply stated, this covenant respects tenants' rights against unwanted, unannounced visits by the landlord that are inconsistent with the tenants' expectations of use and enjoyment. For example, the landlord cannot enter the leased premises to grab a beverage, watch television, or take a shower or nap.

[14]     In *Olds v. Noel*, another panel of this Court examined a similar lease provision pertaining to a landlord's right of entry onto the leased property. 857 N.E.2d 1041, 1044-46 (Ind. Ct. App. 2006). In *Olds*, a postal carrier slipped and fell on ice and snow on a private sidewalk at the side of a leased home. He filed a negligence action against the landlords, arguing in part that the landlords'

---

[4] Other provisions of the lease such as those limiting parking and the number of overnight guests and duration of visits allowed on the Property, as well as provisions prohibiting smoking or any change of locks by the Tenants, are common lease provisions.

retention of the right of entry onto the leased property was sufficient to create a duty of care for the safety of those entering the property. The landlords sought summary judgment, arguing that they had transferred possession and control of the property to the tenants and therefore were not liable for Olds's injuries, which occurred on a private area of the property. *Id.* at 1043. The trial court granted the landlords' motion for summary judgment. *Id.* On appeal, the panel rejected Olds's argument that by retaining the right of entry to the leased property for various stated purposes, including inspection, care and management, improvements, repairs, maintenance, safety, preservation, or showing to prospective tenants, the landlords never transferred the full possession and control of the leased property to the tenants. *Id.* at 1045. The *Olds* court aptly observed that lease provisions dictating the circumstances in which a landlord may enter the leased property are common in almost every lease of any single- or multi-unit residential property. *Id.* at 1046. The court reasoned that "[t]o agree with Olds here, then, would be to rule that all of those leases leave a landlord subject to liability for any injury to any third-party invitee anywhere on the premises of a leased property. The exception would swallow the general rule." *Id.*

[15] The right-of-entry provision here is nearly identical to the one in *Olds* and is a staple in most standard residential leases. In fact, the designated materials indicate that Mrs. Witt used an online form lease. In addition to specifying legitimate reasons for the Landlords' entry into the Property, section 29 of the lease includes a provision requiring twenty-four hours' notice for entry except in

emergency situations. The Habhabs claim that the Landlords had occasionally opened the door to the Property to press the button for access to the garage and that this conduct illustrates their control over the Property. However, the Landlords' need to access the garage was precipitated by the Tenants' request for immediate occupancy and the Landlords' corresponding need to store their son's belongings inside it. Even so, the dog attack occurred in a private area of the Property, inside the Tenants' son's bedroom in the morning as Armondo slept. Even though the Landlords retained the right to enter the Property at specified times under specified circumstances, per the lease, and even though, as a practical matter, they had to gain access to the garage per the accommodations given to the Tenants at the outset of the lease, they demonstrated that they lacked control over the "the specific area where the dog bite occurred." Appealed Order at 5. In other words, the Landlords did not retain the right to enter the Tenants' son's bedroom on that morning without prior notice and a purpose specified in paragraphs 19 and 29 of the lease. As such, they were not in a position to control the dog's entrance into the son's bedroom and thus prevent the attack.

[16] Nevertheless, the Habhabs submit that the Landlords retained control through the pet provision, claiming that it is evidence of their control over the weight, vaccination, and registration of the Tenants' dog and of their actual knowledge of its dangerous propensities. In particular, they point to tenant Roe's prior criminal citation for keeping an unvaccinated dog as evidence of knowledge pertaining to the vaccination status of this particular dog. *See* Ind. Code § 35-

46-3-1 (offense of harboring nonimmunized dog). Even if an unvaccinated dog can be considered dangerous, there is no designated evidence indicating that this particular dog was the same dog for which Roe received his criminal citation or that this dog was, in fact, unvaccinated. Notwithstanding, it appears that the Landlords did not enforce the provision requiring documentation concerning its vaccination.

[17] As for the weight restriction, Mrs. Witt testified by deposition that when the Tenants requested permission to keep a dog on the property, tenant Roe described the dog as "itty bitty." Appellants' App. Vol. 2 at 70, 77.[5] The lease as originally written prohibited pets, and the Landlords agreed to amend it as an accommodation, with the weight limit correlating to Gibson's description of the dog. To the extent that the Habhabs claim that the information concerning the dog's size and/or breed amounts to actual knowledge that this particular dog is dangerous, we disagree. "[A]ll dogs, regardless of breed or size, are presumed to be harmless domestic animals." *Poznanski*, 788 N.E.2d at 1258. Likewise, the Habhabs' assertion that the Landlords had actual knowledge of the dog's dangerous propensities because Mrs. Witt had seen bite and scratch

---

[5] The Landlords request that we not consider certain of the Habhabs' designated affidavits because they are unverified and undated. Plaintiffs' Exs. B, C. The Habhabs claim that the Landlords waived the issue by failing to object and move to strike them below. We agree with the Habhabs. "A complaining party has a duty to direct the trial court's attention to a defective affidavit, and failure to raise an objection constitutes waiver." *R.P. Leasing, LLC v. Chem. Bank*, 47 N.E.3d 1211, 1216 n.5 (Ind. Ct. App. 2015) (quoting *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990)). Notwithstanding, the affidavits at issue implicate the Landlords' knowledge only as to the size and breed of the dog and do not implicate actual knowledge of any dangerous propensities of this particular dog.

marks on Gibson's arm, which Gibson attributed to a pit bull, are mere supposition and cannot serve as a basis for actual knowledge concerning the propensities of this particular pit bull. Speculation, supposition, and conjecture cannot create questions of fact. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014).

[18] In a similar case involving a third party bitten by a residential tenant's dog, the lease included a provision that prohibited pets without the landlord's prior authorization. *Morehead*, 932 N.E.2d at 1274. The incoming tenants requested permission to keep their fifty-pound male pit bull at the rental house, and the landlord agreed, after receiving their assurances that the dog had been with them for seven years and was well behaved. *Id.* The landlord admitted that he was concerned because of the breed's reputation for viciousness, and the designated evidence showed that when the landlord visited the rental house to collect for rent and utilities, the dog barked at him, and the tenant warned him that the dog was very hostile to strangers. *Id.* One day, the dog bit a postal carrier as she walked along the public sidewalk in front of the rental house. *Id.* The postal carrier filed a negligence action against the landlord, and the trial court granted summary judgment for the landlord. On appeal, another panel of this Court affirmed, finding that while there was evidence that the landlord had actual knowledge of the dog's dangerous propensities, the evidence concerning the landlord's right of entry, coupled with the postal carrier's statement that she did not expect the landlord to control the dog's ability to escape from the house and come out to the public sidewalk, supported summary judgment in his favor.

Here, the Landlords knew that the dog was present on the Property, that it was larger than the weight limits included in the lease, and that maybe it was a pit bull. Unlike the landlord in *Morehead*, the designated evidence shows that, prior to the attack in question, the Landlords had not observed any behavior by the Tenants' dog that would demonstrate actual knowledge that it was vicious. Even so, like the landlord in *Morehead*, the Landlords did not retain control over the area where the attack occurred. To establish liability in the landlord, the *Morehead* test requires that both prongs be satisfied; in this case, the designated evidence supports neither prong. 932 N.E.2d at 1276. In sum, the Landlords negated the element of duty, and therefore it was incumbent on the Habhabs to come forward with contrary evidence establishing a genuine issue of material fact concerning the Landlords' alleged duty to protect Armondo from being bitten by the Tenants' dog in their son's bedroom. They did not do so. Based on the foregoing, we affirm the trial court's grant of summary judgment in favor of the Landlords.

Affirmed.

Bailey, J., and Altice, J., concur.